UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:17-cv-03581-SVW-MRW | Date | June 6, 2018 |
|---|---|---|---|
| Title | *Martinez et al. v. Optimus Props., LLC et al.* | | |

---

Present: The Honorable   STEPHEN V. WILSON, U.S. DISTRICT JUDGE

| Paul M. Cruz | N/A |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| N/A | N/A |

Proceedings:       IN CHAMBERS ORDER GRANTING IN PART AND DENYING IN PART
                   DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [71]

## I.    INTRODUCTION

This is one of six related actions alleging housing discrimination practices in the Koreatown neighborhood of Los Angeles.[1] On May 11, 2017, Cornelia Martinez, Ana Velasquez, Hilda Deras, Carmen Castro (aka Carmen Castro Mejia), Gloria Morales, and SAJE, Inc. (collectively, "Plaintiffs") brought suit against Optimus Properties, LLC, Roxbury Ventures, LLC, Magnolia Avenue Properties, LLC, and Jerome Mickelson (collectively, "Defendants").[2] On February 16, 2018, Defendants filed a

---

[1] The dispute was originally brought before this Court in *Martinez v. Optimus Properties, LLC*, No. 2:16-cv-08598-SVW-MRW (C.D. Cal. filed Nov. 17, 2016). Pursuant to this Court's order, *id.*, Dkt. 47 (filed Mar. 13, 2017), Plaintiffs dismissed the action without prejudice and filed six separate complaints, each pertaining to a single building. *Id.*, Dkt. 69. The five other actions are: *Ramos v. Optimus Properties, LLC*, No. 2:16-cv-03582-SVW-MRW (C.D. Cal. filed May 11, 2017); *Escamilla v. Optimus Properties, LLC*, No. 2:16-cv-03583-SVW-MRW (C.D. Cal. filed May 11, 2017); *Allen v. Optimus Properties, LLC*, No. 2:16-cv-03584-SVW-MRW (C.D. Cal. filed May 11, 2017); *Rivera v. Optimus Properties, LLC*, No. 2:16-cv-03585-SVW-MRW (C.D. Cal. filed May 11, 2017); and *Guerrero v. Optimus Properties, LLC*, No. 2:16-cv-03586-SVW-MRW (C.D. Cal. filed May 11, 2017).

[2] Plaintiffs filed a first amended complaint ("FAC") after the briefing of this motion commenced. Dkt. 86 (filed Mar. 9, 2018). The FAC names an additional defendant, Optimus Properties Management, LLC, which has not joined the instant motion. With respect to the moving defendants, the factual allegations and legal claims in the FAC are largely similar to those in the original complaint. The motion for summary judgment was directed to the original complaint; as the amended complaint completely replaces the original, the court could find that the motion is technically moot. *See Hayes v. Washington*, No. 3:16-CV-05095-BHS-DWC, 2017 U.S. Dist. LEXIS 38977, 2017 WL 1037572, at *7 (W.D. Wash. Mar. 16, 2017). But the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:17-cv-03581-SVW-MRW | Date | June 6, 2018 |
|---|---|---|---|
| Title | *Martinez et al. v. Optimus Props., LLC et al.* | | |

motion for summary judgment in the Magnolia property action. Dkt. 71. For the following reasons, the Court **GRANTS IN PART** and **DENIES IN PART** the motion.

## II.   BACKGROUND

Martinez, Velasquez, Deras, Castro, and Morales (collectively, "Individual Plaintiffs") are residents of 1423 Magnolia Avenue (the "Building"). Dkt. 83-1 ("UMF") ¶¶ 1, 11, 48, 67, 102, 133, 158, 173. Individual Plaintiffs are Latina, and all but Deras have children. *Id.* ¶¶ 11, 67, 102, 123; Velasquez Decl., Dkt. 130-2, ¶ 3; Deras Decl., Dkt. 130-3, ¶ 2; Castro Decl., Dkt. 130-4, ¶ 3; Morales Decl., Dkt. 130-5, ¶ 3; *see* UMF ¶¶ 38, 42, 125, 159–61. SAJE is a nonprofit organization that assisted the Buildings' tenants with issues relating to their building owners and managers. Dkt. 90-1 ("AMF") ¶ 211.

Defendant Magnolia Avenue Properties, LLC owned the Building from March 2015 to September 2016. The Individual Plaintiffs resided there during that entire time. *Id.* ¶ 203; *see id.* ¶¶ 1, 48, 102, 133, 173. Defendant Roxbury Ventures, LLC managed the day-to-day operations and construction of the Building, in addition to the other buildings in the related actions. *Id.* ¶ 205. Defendants Magnolia, Roxbury, and Optimus Properties, LLC share the same principals, Kamyar and Joseph Shabani, and the same principal place of business. *Id.* ¶ 204. The Shabanis are the sole members of Optimus and Roxbury. *Id.*[3]

As detailed below, Plaintiffs allege that Defendants have engaged in unlawful housing discrimination based on Individual Plaintiffs' Latina[4] identity and familial status. Individual Plaintiffs bring nine claims: (1) violations of the Fair Housing Act ("FHA"); (2) violations of the California Fair

---

Court can also address the merits of the motion. *See Nat'l Ass'n for the Advancement of Multijurisdiction Practice v. Berch*, 973 F. Supp. 2d 1082, 1088 n.3 (D. Ariz. 2013) ("Although the procedural history is convoluted, the parties' motions for summary judgment have been fully briefed and the Court has considered the parties' arguments."); *Cooley v. Marshal*, No. 2:09-cv-00559-RLH-GWF, 2011 U.S. Dist. LEXIS 83054, 2011 WL 3240453, at *5 (D. Nev. July 28, 2011) (reaching the merits of a motion for summary judgment because amended complaint that mooted motion merely added a party).

[3] Plaintiffs assert in their pleadings and briefs that the moving LLC Defendants, along with newly added Defendant Optimus Properties Management, LLC, are united in interest and are not separate and distinct entities. *See, e.g.*, Dkt. 86 ¶¶ 26–36. In this motion, Defendants do not argue as a basis for their motion that distinctions among the LLC Defendants negate any of the LLC Defendants' liability. Consequently, for the purpose of this motion only, the Court assumes the LLC Defendants have common interests, are engaged in a joint venture, and are effectively one and the same.

[4] Discrimination on the basis of sex is not at issue in this action. The Court uses "Latino" and "Latina" interchangeably in this Order.

:

Initials of Preparer

PMC

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:17-cv-03581-SVW-MRW | Date | June 6, 2018 |
|---|---|---|---|
| Title | *Martinez et al. v. Optimus Props., LLC et al.* | | |

Employment and Housing Act ("FEHA"); (3) violations of the Unruh Civil Rights Act ("UCRA"); (4) private nuisance; (5) negligence; (6) violations of the Los Angeles Rent Stabilization Ordinance ("LARSO"); (7) violations of California Civil Code § 1940.2; (8) violations of California Civil Code § 1942.5; and (9) unfair competition. Dkt. 86; *accord* Dkt. 1. SAJE joins Individual Plaintiffs' first, second, and ninth claims, asserting it has "divert[ed] substantial resources, including significant amounts of staff time," to address the Building tenants' plight. *Id.*

### III.    LEGAL STANDARD

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the initial responsibility of informing the court of the basis of its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of a triable issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). In determining a motion for summary judgment, all reasonable inferences from the evidence must be drawn in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). A genuine issue exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and material facts are those "that might affect the outcome of the suit under the governing law." *Id.* at 248. However, no genuine issue of fact exists "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986).

### IV.    DISCUSSION

Pursuant to Federal Rule of Civil Procedure 56, Defendants move for summary judgment on all nine of Plaintiffs' claims. The motion is **GRANTED IN PART** and **DENIED IN PART** as follows.

#### a.    Evidentiary Objections

As a preliminary matter, the Court considers Defendants' evidentiary objections to statements attributed to Andrea Mijail, Carmen Correa, Angelina Quintero, and Jerome Mickelson, and to facts

| | : | |
|---|---|---|
| Initials of Preparer | | |
| | PMC | |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:17-cv-03581-SVW-MRW | Date | June 6, 2018 |
|---|---|---|---|
| Title | *Martinez et al. v. Optimus Props., LLC et al.* | | |

pertaining to Defendants' other properties. Dkt. 90, at 9–11.[5]

First, Defendants argue that statements by their employees are hearsay. Under Federal Rule of Evidence 801(d)(2), a "statement . . . offered against an opposing party" and either "made by the party in an individual or representative capacity" or "made by the party's agent or employee on a matter within the scope of that relationship and while it existed" is not hearsay. Jerome Mickelson, Optimus Property Management, LLC's asset manager and a supervisor of the LLC Defendants' employees, is a defendant in this action. UMF ¶ 200; AMF ¶ 208. The other three individuals are all agents or employees of Defendants. Andrea Mijail is an employee of Optimus who managed the Building and other buildings in the neighborhood owned and managed by Defendants. AMF ¶ 218. Carmen Correa was another of Defendants' managers of the Building.[6] UMF ¶ 170. Angelina Quintero was a maintenance technician who worked at the Building and other properties owned by Defendants. Quintero Decl., Dkt. 130-22, ¶¶ 5, 7; AMF ¶ 247; *see id.* ¶¶ 248–49.

All of the statements attributed to Mickelson are not hearsay under Federal Rule of Evidence 801(d)(2)(A), as Mickelson is a defendant and Plaintiffs offer his own statements against him. Mijail, Correa, and Quintero are Defendants' employees or agents. The statements identified above were related to matters within the scope of the agents' employment as building managers or, in the case of Quintero, a maintenance technician. *See Hoptowit v. Ray*, 682 F.2d 1237, 1262 (9th Cir. 1982) ("[T]he rule does not require a showing that the statement is within the scope of the declarant's agency. Rather, it need only be shown that the statement be related to a matter within the scope of the agency."). For example, Correa expressed to one of the Individual Plaintiffs that Defendants sought to rent the Building out to childless tenants. AMF ¶ 371. Directives regarding rental practices are certainly "matter[s] within the scope of" Correa's role as Defendants' building manager, which included issuing Building tenants three-day notices, enforcing Building rules, and fielding queries from tenants. *See, e.g.*, UMF ¶¶ 98, 170. These statements are not hearsay under Federal Rule of Evidence 801(d)(2)(D).[7]

---

[5] Defendants did not object to the declarations the Court requested at the motion hearing, which Plaintiffs filed on May 9, 2018. To the extent Defendants may object to the contents of the declarations on the same grounds it objected to the facts initially offered by Plaintiffs in opposition to the motion, the Court addresses those evidentiary issues here.

[6] Carmen and Damian Correa were on-site managers who replaced Mijail. *See* AMF ¶ 369. This order refers to Carmen Correa as "Correa."

[7] Mickelson's statements are admissible as to the LLC Defendants for the same reasons. The Court does not opine on the admissibility of statements attributed to Defendants' agents or employees that are not identified or recounted in this Order.

Initials of Preparer

PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:17-cv-03581-SVW-MRW | Date | June 6, 2018 |
|---|---|---|---|
| Title | *Martinez et al. v. Optimus Props., LLC et al.* | | |

Second, Defendants claim that statements and information offered about buildings managed by Defendants that are not at issue in this action are irrelevant. Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and it is consequential to the action. Fed. R. Evid. 401. Defendants cite *Cooper v. Federal Reserve Bank of Richmond*, 467 U.S. 867, 876, 104 S. Ct. 2794, 81 L. Ed. 2d 718 (1984), for the proposition that "Plaintiffs' assertion of a 'pattern and practice' theory of discrimination . . . in this private Plaintiffs' case is contrary to law."[8] Dkt. 90, at 10. But Plaintiffs introduce facts regarding Defendants' other buildings as direct and circumstantial evidence of discrimination against them. For example, Mijail told a white tenant at another Optimus property that Mijail was sent to that building to flush the Mexicans out, that Defendants wanted to get rid of undesirable tenants such as Mexicans, and that she had just come from another building she had cleaned up. AMF ¶ 222. Mijail's statements were not limited to her or Defendants' treatment of tenants at that building—they tend to make Defendants' alleged discriminatory treatment more probably.[9] Evidence of discrimination across Defendants' properties makes it more probable that Defendants discriminated against Individual Plaintiffs. *See* Fed. R. Evid. 401(a). The relevance objections are overruled.

To the extent the parties maintain other objections to evidence, the Court need not consider the objected-to evidence to decide the motion. Those objections are overruled as moot.

**b. First Claim: Fair Housing Act**

"[T]o provide . . . for fair housing throughout the United States," the FHA protects renters from discrimination and proscribes certain housing practices. 42 U.S.C. § 3601. The Department of Housing and Urban Development's ("HUD") regulations implementing the FHA inform the scope of the FHA and claims made thereunder. *See Meyer v. Holley*, 537 U.S. 280, 287–88 (2003) (deferring to regulation interpreting the FHA); *see generally* 24 C.F.R. §§ 100.50–.80, .500, .600. The FHA makes unlawful several categories of acts constituting discriminatory housing practices. *See* 42 U.S.C. § 3602(f). This

---

[8] *Cooper* discussed the propriety of using pattern-and-practice evidence and evidence of individual discrimination in deciding a disparate impact class action claim under Title VII. *See* 467 U.S. at 875–77. It did not discuss the admissibility or relevance of evidence. *See id.*

[9] Another tenant who offered this testimony was a tenant of 401 South Kenmore. Pennock Decl., Dkt. 130-21, ¶ 2. At oral argument, Jerome Mickelson testified that Andrea Mijail became building manager of 401 South Kenmore directly after she left her management position at the Magnolia Building. Mijail's statement to that tenant, therefore, indicates that she had just came from the Magnolia Building, where she cleaned house, a phrase she said meant to rid a building of Mexicans tenants. *See id.* ¶¶ 10, 14.

| | : |
|---|---|
| Initials of Preparer | |
| | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:17-cv-03581-SVW-MRW | Date | June 6, 2018 |
|---|---|---|---|
| Title | *Martinez et al. v. Optimus Props., LLC et al.* | | |

includes housing discrimination because of race, national origin, disability, or familial status. *See* 42 U.S.C. § 3604. "Familial status" is the status of having a minor in one's custody in a domicile. 42 U.S.C. § 3602(k). If a plaintiff proves intentional discrimination, the defendant is liable whether or not it had a legally sufficient justification for its action. 24 C.F.R. § 100.500(d).

Plaintiffs allege FHA violations under 42 U.S.C. § 3604(a), (b), (c), (e), and (f)(2), and 42 U.S.C. § 3617. Dkt. 86 ¶¶ 224–35; *accord* Dkt. 1 ¶¶ 223–34. Plaintiffs assert multiple theories of liability within this single claim, so the Court addresses Plaintiffs' theories under each FHA section in turn.

### 1. 42 U.S.C. § 3604(a): Refusal to Rent

42 U.S.C. § 3604(a) prohibits one from refusing to rent, refusing to negotiate rental, and making unavailable or denying dwellings because of race, familial status, or national origin. Plaintiffs assert that Defendants have violated this section, arguing that 24 C.F.R. §§ 100.60(b)(5) and (7) create Plaintiffs' FHA claim under this section. The regulations proscribe evicting tenants and subjecting tenants to harassment that causes the tenants to vacate their dwellings because of their membership in a protected class. 24 C.F.R. § 100.60(b)(5), (7).

It is undisputed that Plaintiffs were not evicted and have not vacated their dwellings. Though Plaintiffs offer evidence that Defendants made attempts to evict them, Plaintiffs remain residents of the Building. *See, e.g.*, UMF ¶¶ 11, 32, 67, 102, 133, 158, 173. Further, Plaintiffs have not shown that they were denied from renting other apartments in the Building, including units that had recently been renovated. *See, e.g.*, UMF ¶¶ 40 (Martinez did not want to move),[10] 84 (Castro did not want to move). Plaintiffs also have not offered any facts suggesting SAJE supported any Building tenants that were evicted or denied rental opportunities. *See* AMF ¶¶ 373–88.

It is uncontested that (1) Defendants' attempts to get Individual Plaintiffs out of their apartments failed, (2) Individual Plaintiffs were not denied the opportunity to rent renovated units, and (3) SAJE has

---

[10] Martinez stated that she did not apply for a newly renovated apartment in the Building "[b]ecause it wasn't being rented to us Latinos. It was being rented to, for example, Americans. Somebody who was just one person." AMF ¶ 306. That does not change the fact that she did not apply for one of the new apartments, making it impossible for Defendants to have refused to rent to Martinez "after the making of a bona fide offer" or to negotiate with Martinez, or "otherwise make unavailable or deny" a newly renovated apartment to Martinez, acts which would be prohibited under this subsection. 42 U.S.C. § 3604(a).

Initials of Preparer

PMC

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:17-cv-03581-SVW-MRW | Date | June 6, 2018 |
|---|---|---|---|
| Title | *Martinez et al. v. Optimus Props., LLC et al.* | | |

not identified any tenants it assisted that were evicted or denied rental opportunities in the Building.[11] Plaintiffs cannot maintain a claim that Defendants discriminatorily evicted them or subjected them to harassment causing them to vacate their units. Accordingly, the Court GRANTS summary judgment on this claim.

### 2.   42 U.S.C. § 3604(b): Discrimination in the Terms, Conditions, or Privileges of Rental

42 U.S.C. § 3604(b) prohibits discrimination "against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, . . . . familial status, or national origin." This section proscribes "[f]ailing or delaying maintenance or repairs," "[l]imiting the use of privileges, services or facilities associated with a dwelling," or "[s]ubjecting a person to harassment . . . that has the effect of imposing different terms, conditions, or privileges" because of race, national origin, handicap, or familial status. 24 C.F.R. § 100.65(b)(2), (4), (7).

A plaintiff may establish a violation of this subsection by showing either the defendant intentionally treated members of a protected class differently or the defendant's policies had a disparate impact on the protected class. *See Tex. Dep't of Hous. & Cmty. Affairs v. Inclusive Cmtys. Project, Inc.*, 135 S. Ct. 2507, 2521, 192 L. Ed. 2d 514 (2015); *Comm. Concerning Cmty. Improvement v. City of Modesto*, 583 F.3d 690, 711 (2009).

To survive summary judgment on a § 3604(b) claim, courts adopt the burden-shifting test applicable to other federal nondiscrimination laws such as Title VII and the ADA. *Sanghvi v. City of Claremont*, 328 F.3d 532, 536 n.3 (9th Cir. 2003). First, the plaintiff bears the burden of establishing a prima facie case of discrimination, which may be accomplished by two methods. *See Pac. Shores Props., LLC v. City of Newport Beach*, 730 F.3d 1142, 1158 (9th Cir. 2013) (construing a claim under 42 U.S.C. § 3605(f)(1)). A plaintiff may follow "the *McDonnell-Douglas* approach" to establish a presumption of discrimination. *Id.* (citing *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d

---

[11] Though one of the Individual Plaintiffs stated that non-Plaintiff tenants of the Building were evicted for failing to pay their rent on the first of the month, *see* AMF ¶ 339, Plaintiffs have not asserted that they may assert a claim under this subsection based on those tenants' eviction, *see* Dkt. 86 ¶ 226; *accord* Dkt. 1 ¶ 225. The Court is doubtful Plaintiffs would have standing to do so.

Initials of Preparer                    :

PMC

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:17-cv-03581-SVW-MRW | Date | June 6, 2018 |
|---|---|---|---|
| Title | *Martinez et al. v. Optimus Props., LLC et al.* | | |

668 (1973)). Under this framework, a plaintiff must show that (1) she is a member of a protected class; (2) she was qualified to receive certain terms, conditions, or privileges of rental; (3) she was denied those terms, conditions, or privileges; and (4) defendant bestowed the terms, conditions, or privileges to a similarly situated party during the time period relatively near when the denial to the plaintiff. *See Budnick v. Town of Carefree*, 518 F.3d 1109, 1114 (9th Cir. 2008); *Cooke v. Town of Colo. City*, 934 F. Supp. 2d 1097, 1113–14 (D. Ariz. 2013).

In lieu of the *McDonnell Douglas* presumption, a plaintiff "may 'simply produce direct or circumstantial evidence demonstrating that a discriminatory reason more likely than not motivated' the defendant and that the defendant's actions adversely affected the plaintiff in some way." *Pac. Shores Props.*, 730 F.3d at 1158 (quoting *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1122 (9th Cir. 2004)). A plaintiff taking this approach "need provide 'very little such evidence . . . to raise a genuine issue of fact . . . ; any indication of discriminatory motive . . . may suffice to raise a question that can only be resolved by a fact-finder." *Id.* at 1159 (quoting *Schnidrig v. Columbia Mach., Inc.*, 90 F.3d 1406, 1409 (9th Cir. 1996)).

If the plaintiff establishes a prima facie case, the burden shifts to the defendant to show a legitimate, nondiscriminatory reason for its actions. *See McDonnell Douglas*, 411 U.S. at 802–03; *Gamble*, 104 F.3d at 305. If the defendant meets that burden, then the burden shifts back to the plaintiff to show that the stated reason is pretextual. *See McDonnell Douglas*, 411 U.S. at 804; *Gamble*, 104 F.3d at 305.

Plaintiffs' opposition to this motion "rel[ies] on direct and circumstantial evidence [of discriminatory intent] to prove their claims" rather than establishing a *McDonnell Douglas* presumption. *See* Dkt. 83, at 11. In so doing, they appear to assert disparate treatment, not disparate impact, theories of their § 3604(b) claim. *See Pac. Shores Props.*, 730 F.3d at 1158 (discussing the "direct and circumstantial evidence" of discriminatory intent approach only in the context of disparate treatment claims).

Plaintiffs identify six broad umbrellas of acts violating this subsection: (1) Defendants served Plaintiffs with baseless eviction notices and other notices or documents designed to pressure them to move, Dkt. 86 ¶ 226; *accord* Dkt. 1 ¶ 225; (2) Defendants denied or delayed maintenance services and repairs or provided substandard workmanship, fixtures, and repairs, Dkt. 86 ¶ 227; *accord* Dkt. 1 ¶ 226; (3) the LLC Defendants prohibited children from reasonable use of the common areas," Dkt. 86 ¶ 229; *accord* Dkt. 1 ¶ 228; (4) Defendants imposed oppressive changes in the terms of their tenancy

Initials of Preparer

PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:17-cv-03581-SVW-MRW | Date | June 6, 2018 |
|---|---|---|---|
| Title | *Martinez et al. v. Optimus Props., LLC et al.* | | |

related to rent collection, Dkt. 86 ¶ 230; *accord* Dkt. 1 ¶ 229; (5) Defendants unreasonably refused to post or explain notices in Spanish," Dkt. 86 ¶ 231; *accord* Dkt. 1 ¶ 230; and (6) Defendants "subjected all Plaintiff tenants to harassment . . . sufficiently severe or persuasive as to interfere with the use or enjoyment of Plaintiff tenants' rental dwellings," Dkt. 86 ¶ 228; *accord* Dkt. 1 ¶ 227. The Court evaluates each in turn.

### A. Eviction Notices and Warnings

Even absent an eviction, serving notices threatening eviction may constitute discrimination in the terms, conditions, or privileges of renting a dwelling. *See Woods-Drake*, 667 F.2d at 1201 (threatening eviction may violate § 3604(b)).

In April 2015, shortly after the Defendants took over the Magnolia building, Plaintiff Cornelia Martinez received a notice to pay rent or quit based on her apparent failure to pay her rent on the first of the month. But her lease permitted her to pay late as long as she also paid a late fee. UMF ¶ 28; AMF ¶¶ 294–95; *see id.* ¶ 203; Dkt. 71-5 (providing a late rent charge of $40). Defendants brought an unlawful detainer action against Martinez that month. AMF ¶ 416; Martinez Decl., Dkt. 130-1, Ex. 5 (unlawful detainer summons and complaint). Defendants served Martinez with three-day notices in January, February, and April 2016 for failure to pay rent, even though she claims she paid her rent within the permitted time. AMF ¶ 305; Martinez Decl. ¶¶ 23, 26–28 & Exs. 8–9, 11. A genuine dispute of material fact exists as to this claim.

Plaintiff Ana Velasquez received a three-day notice to pay rent or quit in April 2015. AMF ¶ 317; Velasquez Decl. ¶ 7 & Ex. 3. Velasquez received two more in February and April 2016, despite the fact that she claims she had paid rent on time. Velasquez Decl. ¶¶ 14, 16 & Exs. 8, 10. A genuine dispute of material fact exists with regard to this claim.

Hilda Deras received a three-day notice in April 2016, demanding that she get rid of the animals she kept in her unit, despite the fact that Deras had kept animals in her unit for decades and the on-site building managers knew she kept pets.[12] Deras Decl. ¶¶ 15–16 & Ex. 7; *see* UMF ¶ 186. Defendants

---

[12] Deras's lease prohibits keeping pets, which is why she received at least one notice of eviction. UMF ¶ 181. Defendants assert that the "waiver of default" provision in the Individual Plaintiffs' leases allows them to enforce rules that previously were not strictly enforced, such as requiring payment on the first day of the month and prohibiting pets. Dkt. 71-1, at 12–14. But Deras

| | | : | |
|---|---|---|---|
| | Initials of Preparer | | |
| | | PMC | |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:17-cv-03581-SVW-MRW | Date | June 6, 2018 |
|---|---|---|---|
| Title | *Martinez et al. v. Optimus Props., LLC et al.* | | |

brought an unlawful detainer action against Deras in May 2016. AMF ¶ 417; *see* Deras Decl. Ex. 8 (unlawful detainer summons and complaint).

Plaintiff Carmen Castro received three-day notices to pay rent or quit in April 2015, June 2015, and July 2016, though she says she was not delinquent. *See* Castro Decl. ¶¶ 7–8, 11–12, 25–26 & Exs. 3, 5, 14; AMF ¶ 418.[13] Castro received numerous warnings in summer 2016 demanding that she restrict her children's activity in the common areas of the building and threatening to serve three-day notices. *Id.* ¶ 347; Castro Decl. Exs. 25–28. Castro claims these notices were based on her familial status.

Plaintiff Gloria Morales received three-day notices to pay or quit in April 2015, February 2016, and April 2016. UMF ¶ 112; AMF ¶ 421; Morales Decl. ¶¶ 10, 14, 20 & Exs. 2, 4, 8. Morales states that she had a practice of paying rent on the third of the month, which she did with her April 2015 rent. Morales Decl. ¶ 11. She also states that she had paid February 2016 rent before receiving the second pay-or-quit notice by mailing a money order via certified mail, and that she "had paid [her] rent for April 2016 in full" and within the permitted time. *Id.* ¶¶ 15, 21 & Ex. 1. Defendants also brought an unlawful detainer action against individuals associated with Morales's unit in February 2016 based on her alleged failure to pay February 2016 rent. UMF ¶ 111; Morales Decl. ¶ 16 & Ex. 5.[14]

Plaintiffs claims that these notices showed Defendants' design to remove Latino and family tenants from the Building and the other properties Defendants own. Andrea Mijail, one of the Building's managers, told a white tenant without children at another of Defendants' buildings that she was sent by

---

had "always" lived with pets in the Building, and Defendants knew about the pets before they filed an unlawful detainer action against her alleging Defendants did not know about them. AMF ¶¶ 332, 384; Deras Decl. ¶ 15. Thus, there remains a genuine dispute of material fact regarding whether Defendants selectively discriminated against Deras in order to coerce her into leaving.

[13]  Defendants acknowledged that one of the three notices was issued due to an account error on their part. Castro Decl. ¶ 26.

[14]  These notices and the unlawful detainer action were not in Morales's name, however. *See, e.g.*, Morales Decl. Ex.5 (summons and complaint against Alexander Navas, naming Doe defendants as "co-tenants and/or unauthorized occupants"). Defendants argue that Plaintiff Morales cannot base her FHA claim on the unlawful detainer action and the notices because she was not the addressee of these documents. Dkt. 71-1, at 14. Defendants offer no authority supporting this position. Nothing in the text of § 3604(b) requires an FHA claimant to be the individual on the lease or named in notices or other papers to face discrimination in the "terms, conditions, or privileges" of tenancy, even if the tenancy is not supported by a lease agreement. In any event, Morales was the de facto recipient of these documents, the three-day notices were addressed to "Alexander Navas AND ALL OTHERS IN POSSESSION," and Morales claims the papers caused her stress. UMF ¶¶ 111–14; AMF ¶¶ 362–63; Morales Decl. ¶¶ 9–10, 13–14, 19–20 & Exs. 2, 4, 8.

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:17-cv-03581-SVW-MRW | Date | June 6, 2018 |
|---|---|---|---|
| Title | *Martinez et al. v. Optimus Props., LLC et al.* | | |

Defendants to the building to "try[] to flush the Mexicans out." *Id.* ¶ 222; *see also id.* ¶¶ 231–32. She indicated she was sent "to get rid of undesirable tenants," specifically Mexicans. *Id.* ¶ 222. Mijail also stated she had just "come from another building that she cleaned up," and that her boss had sent her to manage Defendants' buildings with the instruction to "clean house." *Id.* On multiple occasions, she told another white tenant that the Latino family tenants in their building were "disgusting," and "that's why we're doing this." *Id.* ¶¶ 240–41.[15] Carmen Correa, another manager of the Building, told Plaintiff Morales that Defendant Mickelson "wants . . . to bring in people without children," and that the Building owners did not want children in the Building. AMF ¶ 371.[16]

Viewing the evidence in the light most favorable to Plaintiffs—as this Court is required to do, there is a triable issue of fact as to whether Defendants' alleged discriminatory purpose more likely than not motivated their actions with regard to the eviction notices.[17] *See Pac. Shores Props.*, 730 F.3d at 1162–64 (reversing summary judgment on FHA claims of disabled individuals recovering from addiction who offered evidence of city's discriminatory intent to target "sober houses" for enforcement of ordinance); *cf. Lowe v. Monrovia*, 775 F.2d 998, 1007 (9th Cir. 1985). The Court also notes the Ninth Circuit's holding that "officials acting in their official capacities seldom, if ever, announce on the record that they are pursuing a particular course of action because of their desire to discriminate against a [protected class.]" *Arce v. Douglas*, 793 F.3d 968, 978 (9th Cir. 2015) (quoting *Smith v. Town of Clarkton*, 682 F.2d 1055, 1064 (4th Cir. 1982)). A reasonable jury could find that Defendants' discriminatory intent to rid the Building of Latina and family tenants motivated Defendants' issuance of excessive notices of eviction.

---

[15] Defendants contend that evidence of statements made to tenants and others not associated with this Building does not support their FHA claim. Dkt. 90, at 9. Defendants correctly note that the evidence of discrimination Plaintiffs proffer must be "relevant to the particular plaintiff's claim," *Gay v. Waiters' & Dairy Lunchmen's Union*, 694 F.2d 531, 550 (9th Cir. 1982), but they fail to identify why Defendants' agents' statements in other contexts are not probative of Defendants' intent in the context of their actions at the Building. Plaintiffs have adduced evidence of discriminatory intent applicable to all Defendants' tenants of Latino descent and all their tenants with children. Plaintiffs need not produce evidence specifically showing that Defendants discriminate against each Individual Plaintiff on an individual basis. *See* 42 U.S.C. §§ 3601, 3604. To survive summary judgment, Plaintiffs merely need to show Defendants have expressed an intent to discriminate against protected classes. *See Pac. Shores Props.*, 730 F.3d 1142, 1159.

[16] Even if a practice is supported by a legally sufficient justification, legal sufficiency is not an adequate defense against a claim of intentional discrimination. 24 C.F.R. § 100.500(d).

[17] Defendants' agents may deny they ever made these statements, among other statements cited in this order. But the credibility of such denials creates a genuine dispute of material fact for the jury to decide, not this Court.

_____ : _____

Initials of Preparer

PMC

## UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:17-cv-03581-SVW-MRW | Date | June 6, 2018 |
|---|---|---|---|
| Title | *Martinez et al. v. Optimus Props., LLC et al.* | | |

The burden shifts to Defendants to show that they undertook these actions for legitimate, nondiscriminatory reasons. Defendants offer that it is undisputed that Plaintiffs consistently did not pay their rent by the first of the month. *E.g.*, UMF ¶¶ 46, 64. Further, Deras's lease prohibits keeping pets, which is why she received at least one notice of eviction. UMF ¶ 181. Defendants assert that the "waiver of default" provision in the Individual Plaintiffs' leases allows them to enforce rules that previously were not strictly enforced. Dkt. 71-1, at 12–14. Therefore, they argue, the notices to comply and the unlawful detainer actions they brought cannot support Plaintiffs' FHA claim. *Id.*

But Plaintiffs have offered sufficient evidence that these reasons Defendants offer could be pretextual. Plaintiffs offer evidence that several of these notices were unjustified; for example, Defendants issued several three-day notices after Plaintiffs had already paid their rent. *See, e.g.*, AMF ¶ 305; Martinez Decl. ¶ 27 & Ex. 10; Velasquez Decl. ¶¶ 14, 16; Castro Decl. ¶¶ 11–12. Defendants acknowledged that at least one of the three-day pay-or-quit notices issued to Castro was erroneous. Castro Decl. ¶ 26. Plaintiffs also show that payment after the first day of the month was contemplated by Martinez, Velasquez, Deras, and Castro's written leases. *See* Dkts. 71-5, 71-9, 71-19, 71-21.

There is a triable issue as to whether Defendants issued Plaintiffs these three-day notices and instituted unlawful detainer proceedings because Defendants intended to force tenants of Latino descent and with minor children out of the building. The Court DENIES summary judgment on this claim.

### B.   Insufficient Maintenance and Repairs

Tenants have a right to adequate and timely repairs and maintenance that is free from unlawful discrimination. 24 C.F.R. § 100.65(b)(2); *see also id.* § 100.65(b)(4) (prohibiting a landlord from "[l]imiting the use of privileges, services or facilities"). Plaintiffs provide enough evidence at this stage to deny Defendants' motion for summary judgment regarding insufficient maintenance.

Plaintiff Cornelia Martinez's apartment had infestations of mice, cockroaches, and bedbugs; peeling paint and bathroom flooring; a leaky bathtub faucet; a malfunctioning heater; and a broken bathroom window. AMF ¶ 293; *see also* Martinez Decl. ¶¶ 31, 34. Plaintiff claims that the several repairs defendants did undertake were insufficient: for example, the mice reopened holes Defendants patched, and Martinez's heater was still not functional. UMF ¶ 27. When the Los Angeles Department of Public Health inspected Martinez's unit, the investigator found cockroaches and rodent feces. AMF ¶ 415; *see also* Martinez Decl. ¶¶ 35–37 & Exs. 15–17.

Initials of Preparer                                    :

PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:17-cv-03581-SVW-MRW | Date | June 6, 2018 |
|----------|----------------------|------|--------------|

| Title | *Martinez et al. v. Optimus Props., LLC et al.* |
|-------|-------------------------------------------------|

Ana Velasquez's unit had a faulty showerhead, faucet, cabinet door, and light bulb fixture covers. UMF ¶ 165; *see* Velasquez Decl. ¶ 10. Velasquez testified that Defendants fixed these issues only after she "made a complaint with the City." *Id.* ¶ 165. There is a dispute as to whether the showerhead was ever fixed. AMF ¶ 320.

Hilda Deras's apartment had nonfunctional electrical outlets; a leaky bath faucet; and infestations of bedbugs, cockroaches, and mice. *Id.* ¶¶ 330, 333. Though Defendants eventually fixed the electrical outlet issue and fumigated the unit, they failed to fix some of Deras's issues even after inspections. UMF ¶¶ 189–90; AMF ¶ 334; Deras Decl. ¶¶ 10–13.

Though Defendants made several improvements to Carmen Castro's apartment, they only fixed some things. For example. Defendants left mold around Castro's bathtub. UMF ¶¶ 78–79; AMF ¶¶ 343, 354; *see also* Castro Decl. ¶ 34 & Ex. 19 (April 2016 request for repairs). The Department of Public Health, upon inspecting Castro's unit in February 2016, found mice droppings in the kitchen, a leaky showerhead, and a missing floor threshold. Castro Decl. ¶ 32 & Ex. 17. Castro's apartment also had a broken bathroom sink door, a broken heater, and multiple infestations. AMF ¶ 358–59; Castro Decl. ¶ 28.

Gloria Morales's unit, too, had bedbugs and cockroaches that survived Defendants' fumigation. AMF ¶ 364; Morales Decl. ¶ 23. Her apartment had leaky plumbing, a rotted kitchen cabinet, broken floor tiles, a broken heater, and broken drawers. AMF ¶ 365; Morales Decl. ¶ 23. Defendants attempted to address her issues only after Morales filed a complaint with the Department of Public Health. Morales Decl. ¶¶ 24–25.

Plaintiffs also note issues with Defendants' provision of water. Martinez explained that "they were constantly turning the water off. They would leave us without water the whole day like they were going to fix. At night, they would turn the hot water off so that the people that came back from work—they had to bathe with cold water." AMF ¶ 311; *accord id.* ¶¶ 349, 369. In spring 2016, "[a]lmost every day" for months during Defendants' ownership, water would be shut off entirely between 9 a.m. and 5 p.m. *Id.* ¶ 326; *see also, e.g.*, Martinez Decl. ¶ 49 ("Defendants frequently turned off our water, sometimes all day and sometimes for a few days in a row."); Velasquez Decl. Ex. 11 (water shut-off notices from February to May 2016); Deras Decl. Ex. 4 (same); Castro Decl. Exs. 20-24 (same); Morales Decl. Exs. 13–15 (same). These issues with provision of water ended when Defendants sold the Building. AMF ¶ 311. Defendants

|  | : |
|--|---|

Initials of Preparer

PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:17-cv-03581-SVW-MRW | Date | June 6, 2018 |
|---|---|---|---|
| Title | *Martinez et al. v. Optimus Props., LLC et al.* | | |

have not explained why these issues could have been occurring.[18]

Plaintiffs offer several statements attributable to Defendants informing their discriminatory intent. In May 2016, when Latina Building tenants confronted Mickelson regarding what they viewed as insufficient repairs, Defendant Mickelson responded, "Well, you people wouldn't even appreciate any of those changes that we would do."[19] *Id.* ¶ 382. Angelina Quintero, a maintenance technician, told a SAJE clerk supervising an apartment inspection at one of Defendants' buildings that she lacked the authority to fix conditions that needed repair because "the company instructed her to do minimal work on apartments that were occupied by Latino tenants." *Id.* ¶ 249; *see id.* ¶ 246. As Quintero stated, "The bed bug/infestation issues were never treated properly in the Latino . . . tenants' units because [Defendants] would use 'watered down treatment' on the infestation," whereas "the newer White . . . tenants' units would be treated with better and more expensive treatments." Quintero Decl. ¶ 26. These statements are sufficient to show a triable issue as to Defendants' discriminatory intent in refraining from maintenance for Latina and family tenants. Moreover, the statements identified previously with respect to Defendants' intent to rid the Building of Latinas and renters with children is probative of their actions. *See id.* Quintero Declaration ("It is my understanding that [Defendants] did not want to invest in making adequate repairs for Latino . . . tenants because they wanted these tenants to move out of the property.").

Defendants assert that the repairs and maintenance were not in fact deficient. In the context of this record, this creates a genuine dispute of material fact for the jury to decide. Defendants also argue that no Individual Plaintiff testified she wanted to move into a newly renovated apartment in the Building. Dkt. 71-1, at 6. The fact that Plaintiffs elected not to move into renovated apartments and enjoyed some repairs to the Building and their units does not preclude Plaintiffs' claim that Defendants' maintenance and repairs were deficient in a way that discriminated against them.[20] As there is a triable issue as to whether

---

[18] The Court notes that this may not be actionable if Plaintiffs cannot show that the entire building was affected by the water shut-off and not just the Individual Plaintiffs or individuals of Latino descent or with minor children.

[19] Though this statement is not overtly discriminatory, a factfinder reasonably could find "you people" was a term charged with racial animus. *See Ave. 6E Invs., LLC v. City of Yuma*, 818 F.3d 493, 506 (9th Cir. 2016) (code words charged with discriminatory animus may provide evidence of discriminatory intent).

[20] Nor is Defendants' proffer of Housing and Community Investment Department of Los Angeles's ("HCIDLA") property activity reports dispositive. See id. at 8–9. HCIDLA investigations concluded that there were no violations the agency discovered during February 11, 2016 site visits. Dkts. 71-2 to -23. But the violations alleged in the HCIDLA complaints were not comprehensive of the issues with maintenance and repair Plaintiffs identify. In any event, other HCIDLA inspections in 2016 found numerous violations of state and local health and safety provisions. *See* Castro Decl. Ex. 18 (February 23, 2016

|  |  | : |  |
|---|---|---|---|
| | Initials of Preparer | | |
| | | PMC | |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:17-cv-03581-SVW-MRW | Date | June 6, 2018 |
|---|---|---|---|
| Title | *Martinez et al. v. Optimus Props., LLC et al.* | | |

Defendants did fail to maintain and repair Plaintiff's apartments and whether those deficiencies were motivated by discriminatory animus, this aspect of the § 3604(b) claim survives summary judgment.

### C.  Restrictions on Children in Common Areas

42 U.S.C. § 3604(b) proscribes "[l]imiting the use of privileges, services or facilities associated with a dwelling because of . . . familial status." 24 C.F.R. § 100.65(b)(4). Plaintiffs assert that Defendants discriminatorily enforced rules against children in the Building that had the effect of "prohibiting children from reasonable use of the common areas." Dkt. 86 ¶ 229; *accord* Dkt. 1 ¶ 228.

Cornelia Martinez and Carmen Castro perceived that the on-site building managers had a rule that children could not be unsupervised in the hallways of the Building. AMF ¶¶ 312, 340; Martinez Decl. ¶ 44; *see* Castro Decl. ¶ 40 ("Mijail approached me and told me that children were not allowed to play in the hallways."). Although Martinez's children did not play in the hallway, Martinez still received a "paper on the wall" noting that her children were running in the hallway. AMF ¶ 299; *see id.* ¶ 310; *see also* Martinez Decl. ¶ 41 & Ex. 18. A genuine dispute of material facts exists.

Castro received at least three notices threatening eviction because her children were playing the hallway. AMF ¶ 346; *see* Dkts. 71-12 to -14; Castro Decl. ¶¶ 42–45 & Exs. 25–28. Both Mijail and Correa "complained and told [her] that [her] children could not be in the hallway, staircase, or other common areas, and threatened eviction if [her] children continued to spend time in the common areas." Castro Decl. ¶ 39; *accord id.* ¶¶ 40–41. Correa complained to Castro and threatened her with eviction because Castro's son left trash outside the door on his way to the trash can. UMF ¶ 96; AMF ¶ 352.

Andrea Mijail approached Ana Velasquez and told her that children could not play in the hallway outside her apartment. Velasquez Decl. ¶ 6; *see also* AMF ¶¶ 322, 325. Carmen Correa told Velasquez that she would call immigration and a social worker because her children were "playing in the hallway." *Id.* ¶ 325. She received three notices between July and August 2016 threatening to serve her a three-day notice should her children continue to run and play in the hallways. Velasquez Decl. Exs. 12–14.

Plaintiff Gloria Morales recieved complaints from Mijail and Correa, who told Morales that her "children could not be in the hallway, staircase, or other common areas, and threatened eviction if my

---

Notice and Order to Comply); Morales Decl. Ex. 12 (April 7, 2016 Notice and Order to Comply).

|  | : |
|---|---|
| Initials of Preparer | |
| | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:17-cv-03581-SVW-MRW | Date | June 6, 2018 |
|----------|------------------------|------|--------------|

| Title | *Martinez et al. v. Optimus Props., LLC et al.* |
|-------|--------------------------------------------------|

children continued to spend time in the common areas." Morales Decl. ¶ 36; *see also* AMF ¶ 369. Like Castro, Morales received at least two notices threatening eviction because her children were playing in the common spaces. Morales Decl. ¶¶ 37–38 & Exs. 16–17.

Plaintiffs allege that Defendants intended to treat children differently by their enforcement of the house rules regarding noise and conduct. Building manager Carmen Correa told Morales that Defendant Mickelson "wants . . . to bring in people without children," and that the Building owners did not want children in the Building. AMF ¶ 371. On July 18, 2016, Morales, Velasquez, Castro, and Morales confronted Carmen Correa about why they received notifications regarding children playing in the common spaces, asking, "Why don't you like the children?" *Id.* ¶ 369; *see id.* ¶¶ 325, 348. Correa responded by threatening to call the police, social workers, and immigration. *Id.* ¶ 369; Martinez Decl. ¶ 45; Velasquez Decl. ¶ 20; Castro Decl. ¶ 46. At the end of the confrontation, Correa added, "Fuck you, mother fucker." AMF ¶ 369; Morales Decl. ¶ 39. A reasonable jury could find that these statements constitute discriminatory intent on the basis of familial status, an issue for the jury.

"[C]onsideration for the children's safety, as well as the safety of other tenants and their property," is Defendants' proffered reason for enforcement of the rules. Dkt. 71-1, at 11. They assert that their neutral, facially nondiscriminatory rules forbidding disruptive conduct prevent obstruction of common spaces.[21] *See* Dkt. 71-1, at 9–11; *see also, e.g.*, Dkt. 71-6 art. II (prohibiting "excessive noise" and "activities and conduct outside of the unit . . . which are likely to annoy or disturb other persons").

But Plaintiffs offer some evidence that Defendants may have treated children differently under their rules. Both Castro and Martinez claim that the building manager's rule as enforced differed from this

---

[21] Defendants state that they are required to do so by the Los Angeles Municipal Code, which provides rules regarding fire hazards. Dkt. 71-1, at 10. But Defendants fail to provide a citation to the provisions they quote at length. *See id.* A review of Los Angeles Municipal Code chapter V, article 7 (fire code) and chapter XVI (housing regulations) does not return a match for the language Defendants quote. Defendants also claim that state and federal regulations also require them to maintain this rule. Dkt. 71-1, at 10–11. All the state and federal regulations Defendants cite are irrelevant. *See* 29 C.F.R. § 1910.176 (prescribing clear aisles where mechanical handling equipment is used); 41 C.F.R. § 50-204.3 (same); 36 C.F.R. § 702.2 (prohibiting obstruction of certain areas at the Library of Congress); 46 C.F.R. § 116.438(e) (prohibiting obstructions of stairways on watercraft); 13 Cal. Code Regs. § 1861 (prohibiting obstructions of certain areas on state property); 22 Cal. Code Regs. § 78509(a)(5) (requiring passageways and stairways to be free from obstruction at adult day health centers); *id.* § 81087(c) (same at social rehabilitation facilities); *id.* § 87307(d)(6) (same at residential care facilities for the elderly); *id.* § 89387(d) (same at foster family homes).

|  |  | : |
|--|--|---|

Initials of Preparer

PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:17-cv-03581-SVW-MRW | Date | June 6, 2018 |
|----------|----------------------|------|--------------|
| Title | *Martinez et al. v. Optimus Props., LLC et al.* | | |

facially nondiscriminatory rule. AMF ¶¶ 312, 340. Martinez stated that the notice she received regarding her children running in the hallways was false because her children "do not go out to run there." AMF ¶ 299; *see also* Martinez Decl. ¶ 41. Castro received warnings stating neighbors had complained about her children's noise in the hallway even though Castro had never personally received a complaint; her neighbors even petitioned against the strict rules against children's play in common areas. AMF ¶ 346; *see* Castro Decl. Ex. 29. Further, during a May 2016 walkthrough with a SAJE representative, upon seeing children sitting or standing quietly in a hallway, Carmen Correa yelled at the SAJE representative, "Tell the tenants to get their children under control." Ayala Decl. ¶ 25. Mickelson then demanded that the Correas "document this incident and make sure you get the names and unit numbers for whose kids these are." *Id.* Plaintiffs' evidence raises a triable issue of fact that the safety justifications are pretextual. Defendants' proffered "legitimate non-discriminatory justification" for their enforcement of the rule does not shield it from liability. *See* 24 C.F.R. § 100.500(d). Martinez, Velasquez, Castro, and Morales's § 3604(b) claim survives on this ground.

### D.  Changes in Rent Collection Practices

The Individual Plaintiffs assert that Defendants stopped accepting rent in a convenient manner and excessively increased their rent, changing the terms, conditions, and privileges of their tenancy on the basis of their Latina identity. *See* Dkt. 86 ¶ 230; Dkt. 83, at 14; Dkt. 1 ¶ 229; *see also* 24 C.F.R. § 100.65(b)(1), (4).[22]

But Plaintiffs have not offered competent evidence that these actions were motivated by discriminatory intent. Plaintiffs offer no evidence why Defendants made the rent collection policy change

---

[22] Around October 2015, Defendants stopped accepting rent checks in an on-site dropbox. AMF ¶ 342; see Velasquez Decl. Ex. C. Tenants were able to pay their rent online, but Plaintiffs here, who did not have ready access to the Internet, were unable to do so. See, e.g., Martinez Decl. ¶ 22; Deras Decl. ¶ 7 & Ex. 2. Martinez was forced to pay rent by sending money orders by certified mail or paying a neighbor to take her rent to Defendants' office in Century City, which was inconvenient for her. Id. ¶ 315; Martinez Decl. ¶¶ 9, 22–25 & Ex. 2. Velasquez "started paying [her] rent by mailing it through certified mail." Velasquez Decl. ¶ 8. After she received a notice of nonpayment despite sending her rent by certified mail, Velasquez had to travel two hours in either direction by bus to deliver rent to Defendants' office in Century City each month. Id. ¶¶ 14-15; AMF ¶ 327. Deras delivered or had her neighbor deliver rent in person to Defendants' Century City office as a result of the change in rent practices. Deras Decl. ¶ 6. Castro paid her rent by a money order sent by certified mail, by traveling to Century City to deliver the rent, or by paying a neighbor to deliver the rent for her, incurring costs in doing so. AMF ¶¶ 342, 344; Castro Decl. ¶ 14. Morales, too, sent her rent by certified mail. See Morales Decl. ¶ 15.

| | : |
|---|---|
| Initials of Preparer | |
| | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:17-cv-03581-SVW-MRW | Date | June 6, 2018 |
|---|---|---|---|
| Title | *Martinez et al. v. Optimus Props., LLC et al.* | | |

and rent increases. A reasonable factfinder could not logically connect Defendants' expressed intent to evict Latino tenants or cause them to vacate the Building with the act of restricting on-site payment. Evidence that Defendants generally were hostile toward Latinas does not assist Plaintiffs' burden to show that a discriminatory motive more likely than not motivated the change in rent collection practices Plaintiffs highlight here, especially seeing as the practices would affect every tenant equally and they did. *See Pac. Shores Props.*, 730 F.3d at 1158.

Moreover, Plaintiffs' brief suggests that this theory of the claim adopted a disparate impact, not a disparate treatment, theory. *See* Dkt. 83, at 18 ("Defendants' argument . . . fails to demonstrate that policies would not have had a *disparate impact* on Plaintiffs . . . ." (emphasis added)). To survive summary judgment under a disparate impact theory, Plaintiffs would need to show discriminatory effect, which would require proof of "a significantly adverse or disproportionate impact on persons of a particular [type] produced by the [defendant's] facially neutral acts or practices." *Modesto*, 583 F.3d at 711 (alterations in original) (quoting *Pfaff v. U.S. Dep't of Hous. & Urban Dev.*, 88 F.3d 739, 745 (9th Cir. 1996)). Though Plaintiffs have shown that they individually were adversely affected by the changes, Plaintiffs have adduced no evidence that Latinas were disproportionately affected by the change in rent or on-site rent collection.

Consequently, based on the record before the Court, summary judgment would be appropriate as to this theory of a § 3604(b) violation. Nevertheless, as discussed *infra* Part V.a., the Court will defer a ruling on this theory pending further briefing.

**E.  Refusal to Post or Translate Notices in Spanish**

Individual Plaintiffs claim that Defendants' building managers' refusal to explain notices regarding their tenancy and failure to post Spanish-language notices violates this provision. Dkt. 86 ¶ 231; *accord* Dkt. 1 ¶ 230. All of the Plaintiffs speak Spanish as their primary language. Martinez Decl. ¶ 4; Velasquez ¶ 3; Deras ¶ 2; Castro Decl. ¶ 3; Morales Decl. ¶ 3. Defendants' notices to Plaintiffs regarding their tenancy, including three-day notices, generally were provided in English with no Spanish translation. *See, e.g.*, Martinez Decl. Ex. 9 (three-day notice dated February 4, 2016); Velasquez Decl. Ex. 10 (three-day notice dated April 15, 2016); Deras Decl. Ex. 7 (three-day notice dated April 15, 2016); Castro Decl. Ex. 5 (three-day notice dated June 4, 2015); Morales Decl. Ex. 8 (three-day notice dated April 15, 2016). Andrea Mijail refused to translate tenancy-related documents. UMF ¶ 38; AMF ¶¶ 291, 317, 323, 328, 367; Martinez Decl. ¶ 39–40; Velasquez Decl. ¶ 7; Morales Decl. ¶ 33.

:

Initials of Preparer

PMC

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:17-cv-03581-SVW-MRW | Date | June 6, 2018 |
|---|---|---|---|
| Title | *Martinez et al. v. Optimus Props., LLC et al.* | | |

Plaintiffs have not identified a cognizable legal basis for this subclaim and have not presented facts that would allow for such a claim to move forward. Though the Court previously declined to dismiss this theory in the original *Martinez* action, *Martinez v. Optimus Props., LLC*, No. 2:16-cv-08598-SVW-MRW, 2017 U.S. Dist. LEXIS 135395, 2017 WL 1040743, at *5 (C.D. Cal. Mar. 14, 2017), given the facts on summary judgment, the Court lacks any evidence that the FHA imposes an affirmative obligation on Defendants here to provide Spanish-language notices. The FHA and HUD regulations do not expressly state that failure to provide notices in a language other than English is a basis upon which a § 3604(b) race or national origin claim may be brought. *See* 42 U.S.C. § 3604(b) (proscribing discrimination because of a protected class "in the terms, conditions, or privileges of . . . rental of a dwelling, or in the provisions of services or facilities in connection" with rental); 24 C.F.R. § 100.65(b) (illustrating a non-exhaustive list of actions prohibited by § 3604(b)). Plaintiffs have not provided, and the Court is not aware of, authority determining that a failure to provide rental-related documents in a specified language is a privilege of tenancy protected by the FHA's race and national origin–nondiscrimination prohibitions. The facts here do not indicate that Defendants' inability to provide Spanish notices caused a violation of the FHA. Accordingly, summary judgment is **GRANTED** as to this theory of § 3604(b) liability.

### F. Harassment

"Subjecting a person to harassment . . . that has the effect of imposing different terms, conditions, or privileges relating to the sale or rental of a dwelling" is prohibited. 24 C.F.R. § 100.65(b)(7). Discriminatory harassment under this section can include "hostile environment harassment," which is severe or pervasive conduct that interferes with "[t]he availability, sale, rental, or use or enjoyment of a dwelling; [or] the terms, conditions, or privileges of the sale or rental." 24 C.F.R. § 100.600(a)(2). Hostile environment harassment "does not require a change in the economic benefits, terms, or conditions of the dwelling or housing-related services or facilities," and it is evaluated based "upon the totality of the circumstances." *Id.* A reasonable factfinder could determine that the acts identified above sufficiently interfere with Plaintiffs' enjoyment of the terms and conditions of Plaintiffs' rental. There is a triable issue as to whether these acts were animated by an intent to remove Latino and family tenants from the Building. The Court DENIES summary judgment on this claim.

| | : | |
|---|---|---|
| Initials of Preparer | | |
| | PMC | |

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:17-cv-03581-SVW-MRW | Date | June 6, 2018 |
|---|---|---|---|
| Title | *Martinez et al. v. Optimus Props., LLC et al.* | | |

 

    **3. 42 U.S.C. § 3604(c): Indication of Rental Preference, Limitation, or Discrimination**

    42 U.S.C. § 3604(c) forbids indication of "any preference, limitation, or discrimination based on race, . . . familial status, or national origin, or an intention to make any such preference, limitation, or discrimination." Expressing a preference for or limitation on any renter based on a protected class violates this subsection. 24 C.F.R. § 100.75(c)(2). "Under § 3604(c), courts ask whether the alleged statement at issue would suggest a preference" to a reasonable jury. *Johnson v. Macy*, 145 F. Supp. 3d 907, 916 (C.D. Cal. 2015). A plaintiff must show that (1) the defendant made a statement, (2) the statement was made with respect to the rental of a dwelling, and (3) the statement indicated a preference, limitation, or discrimination against the plaintiff on the basis of a protected status. *See White v. U.S. Dep't of Hous. & Urban Dev.*, 475 F.3d 898, 904 (7th Cir. 2007). Discriminatory intent need not be shown to demonstrate a violation of this subsection. *Iniestra v. Cliff Warren Invs., Inc.*, 886 F. Supp. 2d 1161, 1169 (C.D. Cal. 2012).

    Plaintiffs allege that Defendants violated this subsection by making "discriminatory statements to tenants, including Plaintiffs," and selecting "media for advertising the rental of dwellings which deny particular segments of the housing market information about housing opportunities" based on protected classes. Dkt. 86 ¶ 233; *accord* Dkt. 1 ¶ 232.

    Plaintiffs have identified several of Defendants' statements that suggest a preference against Latina and family tenants. Mijail told Martinez, "Because as a Latino, you have children, . . . [you] can't pay the same rent that the other people are paying." UMF ¶ 38; *see also* Martinez Decl. ¶ 40. There is a genuine dispute as to whether the jury would interpret this statement as indicating discrimination against Martinez based on her Latina identity and minor children in the context of rental of the Building.

    Plaintiffs have not identified any such preferential statements made to Plaintiffs Castro or Deras, however. Castro generally asserted in her deposition that Defendants installed rules prohibiting children from playing outside Building units, *see, e.g.*, AMF ¶ 340, but Defendants' rules are not facially discriminatory against tenants with children. *See, e.g.*, UMF ¶ 57. Castro does not identify any specific document or statement undergirding her claim under this subsection. *See generally* AMF ¶¶ 337–59; Castro Decl.[23] Though the notices Defendants issued to Castro offer allegations regarding her children's

---

[23] The opposition brief claims that "a video recording produced by Defendants includes Ms. Correa admitting that she enforces

 

                                   :

Initials of Preparer             PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:17-cv-03581-SVW-MRW | Date | June 6, 2018 |
|---|---|---|---|
| Title | *Martinez et al. v. Optimus Props., LLC et al.* | | |

behavior, they do not contain any statements that are facially discriminatory against tenants with children. *See* Dkt. 71-12 to -14. A reasonable jury could not find that the notices, read alone, indicated discrimination against Castro because she lived with children, as opposed to Defendants' effort to enforce a neutral rule prohibiting noisy behavior as applied to Castro's children's noisy behavior.

Likewise, Plaintiffs have not identified any specific statements made to Deras that could be construed as stating an unlawful discriminatory preference. Deras testified that Mijail "said she didn't speak Spanish and why is it that we had not learned English." AMF ¶ 336; Deras Decl. ¶ 14. Deras's testimony does not offer any facts suggesting these statements were related to housing, a crucial aspect of a § 3604(c) claim. If Mijail said this in her personal capacity, outside her role as a building manager, then it could not be imputed to Defendants or serve as the basis of a claim under this subsection. The fact that Mijail was the building manager does not imply that all her statements were made in that capacity. The Court is not aware of any other specific statements indicating discrimination against Deras. *See* UMF ¶¶ 173–97; AMF ¶¶ 329–36, 384, 417.

Plaintiffs assert in their complaints that Defendants' "discriminatory statements to tenants" and "selection of media for advertising the rental of dwellings" violate this subsection. Dkt. 86 ¶ 233; *accord* Dkt. 1 ¶ 232. Plaintiffs do not assert any facts or argument suggesting why statements made to non-Plaintiff tenants and Defendants' advertisements give rise to any of the Plaintiffs' claims, let alone Deras or Castro's. Plaintiffs have not adduced any evidence that Deras or Castro were aware of or adversely affected by these statements or the manner in which Defendants advertised vacancies in their properties. *Cf. Elliott v. QF Circa 37, LLC*, No. 16-cv-0288-BAS-AGS, 2017 U.S. Dist. LEXIS 206015, 2017 WL 6389775, at *11 (S.D. Cal. Dec. 14, 2017) ("Section 3604(c) protects [plaintiff's] interests as someone to whom the alleged statements were made *and which resulted in injuries*." (emphasis added)). Moreover, no reasonable juror could conclude that the mere fact that Defendants advertised Building vacancies online suggests a preference against Latinas, especially given that Defendants also posted advertisements on the Building. UMF ¶ 43.

Summary judgment is denied as to Plaintiffs Martinez, Velasquez, and Morales's § 3604(c) theory. Summary judgment is granted to the extent Plaintiffs Castro and Deras seek to recover under this

---

a rule restricting children from playing in the hallways." Dkt. 83, at 6. This video recording, and any record of this statement, is not in the evidentiary record before the Court on this motion. Consequently, the Court cannot base a denial of summary judgment on this.

Initials of Preparer                :

                                      PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:17-cv-03581-SVW-MRW | Date | June 6, 2018 |
|---|---|---|---|
| Title | *Martinez et al. v. Optimus Props., LLC et al.* | | |

theory of their FHA claim.

### 4.  42 U.S.C. § 3604(e): Blockbusting

42 U.S.C. § 3604(e) proscribes inducement of sale or rental of a dwelling by making "representations regarding the entry or prospective entry into the neighborhood of a person or persons of a particular race, . . . familial status, or national origin." Examples of acts this section prohibits include:

> (1) Engaging, for profit, in conduct (including uninvited solicitations for listings) which conveys to a person that a neighborhood is undergoing or is about to undergo a change in the race, color, religion, sex, handicap, familial status, or national origin of persons residing in it, *in order to encourage the person to offer a dwelling for sale or rental*.
> (2) Encouraging, for profit, any person *to sell or rent a dwelling* through assertions that the entry or prospective entry of persons of a particular race, color, religion, sex, familial status, or national origin, or with handicaps, can or will result in undesirable consequences for the project, neighborhood or community, such as a lowering of property values, an increase in criminal or antisocial behavior, or a decline in the quality of schools or other services or facilities.

24 C.F.R. § 100.85(c)(1)–(2) (emphases added). The HUD regulation pertaining to these practices is called "Blockbusting." *Id.* § 100.85.

Plaintiffs identify "Defendants' stated desire not to rent to persons with children, restrictions on children's use of the Building, comments and notices regarding tenants' children, and refusal to offer alternative forms of pest control" as conduct that violates this subsection. Dkt. 83, at 13–14. But § 3604(e) pertains to acts aimed to induce the sale or rental of a dwelling. *See* 24 C.F.R. § 100.85(c). The acts made by a building's owner or landlord are not the target of this subsection, which governs unlawful blockbusting practices directed to building owners and landlords. Plaintiffs offer no facts indicating they are in a position to sell or rent apartment units they themselves rent. *See, e.g.*, Dkt. 71-5 § 5 (lease term prevented Plaintiff Martinez from assigning or subletting her right to possession). Summary judgment is appropriate as to their claim under this subsection.[24]

---

[24]  Though Plaintiffs seem to assert in their opposing brief that these acts also violated § 3604(d), Dkt. 83, at 14 (claiming acts "violated Sections 3604(a)–(e)"), their complaints do not allege a violation of this subsection. *See* Dkt. 86 ¶¶ 222–38; *accord*

:

Initials of Preparer

PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:17-cv-03581-SVW-MRW | Date | June 6, 2018 |
|---|---|---|---|
| Title | *Martinez et al. v. Optimus Props., LLC et al.* | | |

### 5.   42 U.S.C. § 3604(f)(2): Discrimination Because of Handicap

42 U.S.C. § 3604(f)(2) prohibits discrimination with respect to the terms, conditions, and privileges of rental because of a handicap. Plaintiffs claimed a violation of this subsection, alleging that Defendants' "imposing unduly oppressive changes in the terms of their tenancy related to rent collection." Dkt. 86 ¶ 230; *accord* Dkt. 1 ¶ 229. In their opposition to this motion, however, Plaintiffs identify no facts supporting a triable issue that any of the Individual Plaintiffs or related individuals have a handicap as defined under 42 U.S.C. § 3602(h), nor that the changes to rent collection methods constituted actionable discriminatory acts.[25]  Nor have they identified Defendants' discriminatory animus against individuals with handicaps. It is not the Court's task "to scour the record in search of a genuine issue of triable fact." *Keenan v. Allan*, 91 F.3d 1275, 1278 (9th Cir. 1996). Counsel have an obligation to lay out their support clearly. *Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001). As to this subsection, Plaintiffs have not done so. Consequently, summary judgment is appropriate as to Plaintiffs' claim under 42 U.S.C. § 3604(f)(2).

### 6.   42 U.S.C. § 3617: Retaliation for Exercising Housing Rights

Under 42 U.S.C. § 3617, it is "unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected" by the FHA. *See also* 24 C.F.R. § 100.400(c) (detailing categories of unlawful retaliatory conduct). As with any retaliation claim, the Court applies the burden-shifting analysis established by the Supreme Court in *McDonnell Douglas*.

Plaintiffs allege that Defendants violated this section by (1) threatening and intimidating Martinez, Velasquez, Castro, and Morales for opposing Defendants' discriminatory policy of not letting their

---

Dkt. 1 ¶¶ 221–37.

[25]  Plaintiffs Velasquez and Castro asked Defendants not to fumigate her unit because their children had asthma. AMF ¶ 319; Velasquez Decl. ¶ 12 & Ex. 6; Castro Decl. ¶ 18 & Ex. 9. They claim those requests were refused. AMF ¶ 319; Velasquez Decl. ¶ 13 & Ex. 7; Castro Decl. ¶ 19. Even assuming that the children's asthma qualified as a handicap and that Plaintiffs had standing to assert discrimination on the basis of their children's disabilities, these facts are immaterial to Plaintiffs' allegation of disability discrimination, which is predicated on the change in the rent collection method. *See* Dkt. 86 ¶ 230; Dkt. 1 ¶ 229. The Court cannot find a disability discrimination allegation that would qualify as a valid FHA claim.

_____   :   _____

Initials of Preparer

PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:17-cv-03581-SVW-MRW | Date | June 6, 2018 |
|---|---|---|---|
| Title | *Martinez et al. v. Optimus Props., LLC et al.* | | |

children use common areas, Dkt. 86 ¶ 229; *accord* Dkt. 1 ¶ 228; (2) serving the Individual Plaintiffs with eviction notices and other documents "designed to pressure them to move," Dkt. 86 ¶ 226; *accord* Dkt. 1 ¶ 225; and (3) instituting unlawful detainer actions against Martinez and Deras after engaging in protected activity, Dkt. 86 ¶ 235; *accord* Dkt. 1 ¶ 234. Defendants argue that Plaintiffs cannot succeed on this aspect of the FHA claim because "they have no evidence that Defendants subjected them to any adverse action caused by their engaging in any protected activity." Dkt. 71-1, at 15. That is, they argue that Plaintiffs have not presented a prima facie case of retaliation.

As discussed *supra*, Plaintiffs have adduced evidence sufficient to raise a triable issue of fact as to whether they faced the adverse actions they identified in their pleadings. *See, e.g.*, AMF ¶ 369 (Correa threatened to call the police, social workers, and immigration in response to questioning from Martinez, Velasquez, Castro, and Morales regarding Correa's enforcement of rules against children); Martinez Decl. Exs. 9, 11 (three-day notices); Velasquez Decl. Exs. 3, 8, 10 (same); Deras Decl. Ex. 7 (same); Castro Decl. Exs. 3, 5, 14 (same); Morales Decl. Exs. 2, 4, 8 (same); Martinez Decl. Ex. 5 (unlawful detainer summons and complaint); Deras Decl. Ex. 8 (same). These actions fulfill the adverse action element given this circuit's broad treatment of what may constitute unlawful coercion, intimidation, threats, or interference under the FHA. *See Walker*, 272 F.3d at 1128–30.

Viewed in the light most favorable to Plaintiffs, complaining to Correa of the enforcement of rules against children was an activity protected by the FHA to the extent Plaintiffs sought to question discriminatory enforcement of rules against family tenants. *See* AMF ¶ 369. A reasonable jury could find that Correa's remark threatening to call authorities was responsive to this confrontation. *See id.* This theory of the claim survives.

The theory that the unlawful detainer actions and notices threatening eviction were retaliatory fails, however, because Plaintiffs have not adduced evidence that any of Plaintiffs' protected activities caused Defendants' actions. Assuming that Plaintiffs' interactions with and complaints to building managers regarding their tenancy issues were activities protected by the FHA,[26] Plaintiffs' theory that

---

[26] It is not clear whether all of Plaintiffs' complaints to management regarding their rental conditions were protected. The FHA prohibits intimidation, threats, or interference "with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, . . . any right granted by" the FHA. Though Plaintiffs had specifically mentioned to Mijail and the Correas that they felt rules restricting children's presence in common areas were unfair, their complaints regarding Defendants' rent collection practices and issues with maintenance and repairs were not tied to the theory of race discrimination they now present in Court. It is uncertain whether Plaintiffs' protests, which did not identify Defendants' acts as interfering with

|  | : |
|---|---|
| Initials of Preparer | |
| | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:17-cv-03581-SVW-MRW | Date | June 6, 2018 |
|---|---|---|---|
| Title | *Martinez et al. v. Optimus Props., LLC et al.* | | |

these interactions animated Defendants' issuance of notices and lawsuits does not rise above speculation. It is true that Plaintiffs have adduced a triable issue as to whether these acts were animated by race and family discrimination. But the record is devoid of any indication that the acts were responsive to Plaintiffs' assertion of their right to be free from housing discrimination. For example, Martinez first complained to Defendants' regarding their refusal to accept late rent with a late fee on April 9, 2015, a week after Martinez received a three-day notice to pay rent or quit and shortly after Defendants had initiated an unlawful detainer action against her. *Compare* Martinez Decl. ¶¶ 12–13 (Martinez confronted Mickelson alongside a SAJE representative on April 9, 2015), *with id.* ¶ 13 (Mickelson told Martinez "he was already suing [her]"); *and id.* Ex. 6 (summons and complaint dated April 9, 2015, attaching April 2, 2017 three-day notice as an exhibit). No reasonable juror could find that the April 2015 notice and lawsuit directed to Martinez were animated an assertion of housing rights she had yet to make. Because Plaintiffs have not adduced any facts suggesting a nexus between the notices and lawsuits and the exercise and enjoyment of Plaintiffs' FHA rights, summary judgment is appropriate as to these theories.

The motion is denied to the extent Plaintiffs predicate their § 3617 claim on the theory that Defendants retaliated against them for confronting Correa about Defendants' enforcement of rules against children. The motion is granted to the extent Plaintiffs' § 3617 claim is based on Defendants' issuance of notices and lawsuits because Plaintiffs have not adduced a causal nexus between those acts and any protected activity.

### 7.   SAJE's FHA Claim Survives

Defendants predicate their argument for judgment against SAJE on the failure of the Individual Plaintiffs' FHA claims. Dkt. 71-1, at 16; Dkt. 90, at 8. As discussed, Defendants are not entitled to judgment as a matter of law with respect to the Individual Plaintiffs' FHA claims, so this argument is unavailing. In any event, the survival of the Individual Plaintiffs' claim is not dispositive of SAJE's FHA claim. *See Cent. Ala. Fair Hous. Ctr., Inc. v. Lowder Realty Co.*, 236 F.3d 629, 642 (11th Cir. 2000); *see also Fair Hous. v. Combs*, 285 F.3d 899, 904–05 (9th Cir. 2002) (citing *Cent. Ala. Fair Hous. Ctr.* for the proposition that a fair housing organization may have standing to recover under FHA for diversion of resources and frustration of mission).[27] Defendants have not offered a cogent reason for judgment as to

---

Plaintiffs' FHA-protected right to be free from unlawful discrimination, would be protected activity if a jury were to determine that the complained-of acts were discriminatory.

[27] In their reply brief, Defendants offer authorities from the D.C. Circuit indicating that expending resources on litigating a

: _____

Initials of Preparer   _____

PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:17-cv-03581-SVW-MRW | Date | June 6, 2018 |
|---|---|---|---|
| Title | *Martinez et al. v. Optimus Props., LLC et al.* | | |

SAJE's FHA claim.

### 8.   Defendants' Other Arguments Are Not Dispositive

In support of their motion, Defendants identify a number of undisputed facts that they contend are favorable to them. But Defendants' motion does not state why these facts entitle them to judgment as a matter of law on Plaintiffs' FHA claims.

For example, Defendants offer that most of the Building's tenants are Latino, and that the Building's managers spoke Spanish to Velasquez. Dkt. 71-1, at 5–6. But Defendants do not offer any argument why these facts, if undisputed, would merit entry of summary judgment in their favor. Plaintiffs' claim is that Defendants treated them differently because of their identity and familial status. The fact that most of the Building's tenants are Latino does not mean that Defendants cannot unlawfully discriminate against Individual Plaintiffs on the basis of their Latino identity. *See Connecticut v. Teal*, 457 U.S. 440, 455, 102 S. Ct. 2525, 73 L. Ed. 2d 130 (1982) ("Congress never intended to give an employer license to discriminate against some employees . . . merely because he favorably treats other members of the employees' group."). Furthermore, Defendants did not choose the tenants currently living in the Building at the time of acquisition; the Court cannot impute any particular motive to that decision. Defendants note that some tenants of the Building are members of other nonwhite racial groups. Dkt. 90, at 7. But the existence of Building tenants of other minority classes does not address Plaintiffs' claim of discrimination against Latinos. A genuine dispute remains based on Plaintiffs' reliance of various statements by Defendants' agents. The Court notes that Defendants' arguments may be convincing to a jury but they are not sufficient for the Court to address at the summary-judgment stage.

Defendants proffer Plaintiff's Deras's admission that Mijail, Correa, and Mickelson never directed any conduct only towards her that she considered discriminatory. UMF ¶¶ 193–95. This is not an admission that she was not in fact discriminated against because of her Latino identity. A defendant's conduct toward an individual plaintiff need not be overtly discriminatory if the plaintiff offers evidence of

---

matter is not itself an injury sufficient to confer constitutional standing. Dkt. 90, at 8 (citing *Fair Emp't Council v. BMC Mktg. Corp.*, 28 F.3d 1268, 1276 (D.C. Cir. 1994), and *Spann v. Colonial Vill.*, 899 F.2d 24, 27 (D.C. Cir. 1990)). As the Ninth Circuit noted in *Combs*, 285 F.3d at 905, "it is not necessary here to conflict with those cases which suggest that litigation expenses alone do not establish standing," as SAJE has offered triable factual issues as to whether its resources were diverted before and beyond the instant litigation, and whether its mission has been frustrated by Defendants' unlawful discriminatory acts. *See, e.g.*, AMF ¶¶ 211, 373.

:

Initials of Preparer

PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:17-cv-03581-SVW-MRW | Date | June 6, 2018 |
|---|---|---|---|
| Title | *Martinez et al. v. Optimus Props., LLC et al.* | | |

the defendant's discriminatory intent; indeed, in most cases, discriminatory animus is concealed. *See Arce*, 793 F.3d at 978. Deras's claim is not foreclosed by her admission.[28]

Defendants note that the number of tenants in Martinez, Velasquez, and Castro's units exceeded the maximum occupancy of the units under their rental agreements. Dkt. 71-1, at 9. They also offer that Martinez, Velasquez, Castro, and Morales all are paid to babysit children in their units. *Id.* But Defendants' brief fails to offer a legal argument as to why these facts are dispositive. Defendants have not identified any uncontroverted facts that would genuinely preclude the jury from determining that Defendants discriminated against Plaintiffs because of their Latina identity and familial status.

### 9. Summary

Plaintiffs' FHA claim survives in part. Summary judgment is appropriate to the extent Plaintiffs' claim fail under 42 U.S.C. § 3604(a) because they remained tenants of the Building during the entire period Defendants owned and operated it. Plaintiffs have not offered evidence sufficient to sustain a blockbusting claim under 42 U.S.C. § 3604(e) because they have not identified acts of Defendants designed to induce them to sell or rent out properties they do not own or have the authority to sublease. Plaintiffs have not offered evidence sufficient to sustain a claim for housing discrimination on the basis of disability under 42 U.S.C. § 3604(f)(2) because no Plaintiff has established a handicap or discrimination because of that handicap. Plaintiffs Deras and Castro have not raised a triable issue as to any indication Defendants made to them indicating a rental preference, so they do not have a claim under 42 U.S.C. § 3605(c). Plaintiffs have not adduced evidence sufficient to support their theory that Defendants' three-day notices and unlawful detainer suits were unlawful retaliation prohibited by 42 U.S.C. § 3617. Summary judgment is **GRANTED** to the extent Plaintiffs' claim is predicated on these legal theories.

The Court will defer determination of the motion as to whether changes in Defendants' rent collection practices had a discriminatory impact on the terms, conditions, or privileges of Plaintiffs' tenancy in violation of 42 U.S.C. § 3604(b).

---

[28]  In any event, Defendants stretch the admission beyond Deras's actual testimony: Mijail made statements to Deras that Deras felt were discriminatory, and Deras felt Defendants discriminated against her. Compare UMF ¶ 193 (stating Mijail did not "direct any conduct toward you that you considered abusive" (emphasis added)), with AMF ¶ 225 ("[T]here was a lot of discrimination, a lot of pressure to put papers on the door. It was very stressful. Too much."), and id. ¶ 336 (identifying as a "discriminatory act addressed to [Deras] personally" that Mijail asked Deras, "why is it that we had not learned English[?]" (emphasis added)).

|  | : |
|---|---|
| Initials of Preparer | |
| | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:17-cv-03581-SVW-MRW | Date | June 6, 2018 |
|---|---|---|---|
| Title | *Martinez et al. v. Optimus Props., LLC et al.* | | |

Otherwise, Plaintiffs have established a triable issue of fact as to whether Defendants discriminated against them in the terms, conditions, or privileges of the rental of their apartment units based on their race, national origin, or familial status. There is also a triable issue as to whether Defendants retaliated against Plaintiffs Martinez, Velasquez, Castro, and Morales for exercising their FHA rights when confronting their building manager about perceived discriminatory enforcement of housing rules. Plaintiffs Martinez, Velasquez, and Morales have raised a triable issue of fact as to whether Defendants made a discriminatory housing indication to them. Summary judgment is **DENIED** as to these aspects of the FHA claim.

### c.  Second Claim: Fair Employment and Housing Act

FEHA tracks the FHA. *See Pac. Shores Props.*, 730 F.3d 1142, 1156 n.14 (9th Cir. 2013) ("We do not separately discuss the Plaintiffs' state law fair housing claims . . . because we 'apply the same standards to FHA and FEHA claims.'" (quoting *Walker*, 272 F.3d at 1131 n.8)); *compare, e.g.*, 42 U.S.C. § 3604(c) (prohibiting the publication of "any notice ,statement, or advertisement, with respect to the sale or rental of a dwelling that indicates any preference, limitation, or discrimination based on" protected classes), *with* Cal. Gov't Code § 12955(c) (prohibiting the publication of "any notice ,statement, or advertisement, with respect to the sale or rental of a housing accommodation that indicates any preference, limitation, or discrimination based on" protected classes).

Defendants argue that "summary judgment should be granted on Plaintiffs' FEHA claim on the same grounds as their FHA claim." Dkt. 71-1, at 16. Because Plaintiffs' FHA claim and FEHA claim are grounded in similar facts and law, summary judgment on this claim is **GRANTED** in part and **DENIED** in part on the same grounds discussed *supra*. The Court will defer decision of the motion to the extent Plaintiffs' FEHA claim is based on Defendants' changes to rent collection practices.

### d.  Seventh Claim: California Civil Code § 1940.2

In California, a landlord is prohibited from "influencing a tenant to vacate a dwelling" by "us[ing] or threaten[ing] to use, force, willful threats, or menacing conduct constituting a course of conduct that interferes with the tenant's quiet enjoyment of the premises in violation of Section 1927 that would create an apprehension of harm in a reasonable person." Cal. Civ. Code § 1940.2(a). "The purpose of Civil Code section 1940.2 is to prohibit a landlord's use of constructive self-help eviction techniques such

|  | : |
|---|---|
| Initials of Preparer | |
| | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:17-cv-03581-SVW-MRW | Date | June 6, 2018 |
|---|---|---|---|
| Title | *Martinez et al. v. Optimus Props., LLC et al.* | | |

as . . . interference with a tenant's quiet enjoyment . . . ." *Erlach v. Sierra Asset Servicing, LLC*, 226 Cal. App. 4th 1281, 1300–01, 173 Cal. Rptr. 3d 159 (2014) (internal quotation marks and citation omitted).

Defendants offer the limited argument that Plaintiffs do not have evidence sufficient to create a triable issue as to this claim. Dkt. 71-1, at 20–21. Individual Plaintiffs state that their claim "is based on Defendants' conduct designed to influence Plaintiffs to vacate their units." Dkt. 83, at 23. The Court is hesitant to determine that Defendants' conduct could be reasonably construed as "menacing," as Individual Plaintiffs suggest it was. *E.g.*, Dkt. 86 ¶ 272; Dkt. 83, at 23; *see* Cal. Civ. Code § 1570 (defining menace as a threat "[o]f unlawful and violent injury to the person or property" or "[o]f injury to the character"). However, Individual Plaintiffs have provided evidence that could show Defendants undertook actions designed to force them out of the Building. *See supra* Part IV.b.2. A reasonable jury could conclude that Defendants "[u]se[d], or threaten[ed] to use, force, willful threats, or menacing conduct" by issuing unwarranted eviction notices, threatening to evict and to call immigration and social service authorities, water shutoffs, and failing to maintain and repair the Building adequately, and that such conduct "interfere[d] with [Individual Plaintiffs'] quiet enjoyment . . . that would create an apprehension of harm in a reasonable person." Cal. Civ. Code § 1940.2(a)(3). The motion is **DENIED** as to the Civil Code § 1940.2 claim.

**e. Eighth Claim: California Civil Code § 1942.5**

Under California law, "it is unlawful for a lessor to increase rent, decrease services, cause a lessee to quit involuntarily, bring an action to recover possession, or threaten to do any of those acts, for the purpose of retaliating against the lessee because he or she . . . has lawfully and peaceably exercised any rights under the law." Cal. Civ. Code § 1942.5(d). "[T]he lessee shall bear the burden of producing evidence that the lessor's conduct was, in fact, retaliatory." Plaintiffs alleged that Defendants issued bad-faith eviction notices, required Plaintiffs to travel to pay rent, charged for utilities, failed to maintain habitable units, and refused to permit pets in retaliation for Individual Plaintiffs' complaints regarding the condition of their units and accommodations for their children, requesting Department of Public Health and HCIDLA inspections. Dkt. 86 ¶¶ 275–76; *accord* Dkt. 1 ¶¶ 274–75.

Defendants challenge Plaintiffs' evidence to support a triable issue of fact of retaliation. Dkt. 71-1, at 21–22. As with Individual Plaintiffs' 42 U.S.C. § 3617 retaliation theory, Individual Plaintiffs have not offered evidence probative of causation. Because it is Individual Plaintiffs' burden to do so, this claim must fail in the absence of evidence of a causal nexus between their protected activities and Defendants'

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:17-cv-03581-SVW-MRW | Date | June 6, 2018 |
|----------|----------------------|------|--------------|
| Title | *Martinez et al. v. Optimus Props., LLC et al.* | | |

conduct.[29] The motion for summary judgment is **GRANTED** as to the Civil Code § 1942.5 claim.

**f. Remaining State Law Claims**

Plaintiffs have brought five other state law claims: violations of the Unruh Civil Rights Act, Private Nuisance, Negligence, violations of the Los Angeles Rent Stabilization Ordinance, and violations of California Unfair Competition Claims.

The Court only has supplement jurisdiction over Plaintiff's state law claims. *See* 28 U.S.C. §§ 1367(a), (c). In *United Mine Workers v. Gibbs*, the Supreme Court stated that "there may be reasons independent of jurisdictional considerations, such as the likelihood of jury confusion in treating divergent legal theories of relief, that would justify separating state and federal claims for trial . . . ." 383 U.S. at 726 (citing Fed. R. Civ. P. 42(b). In the Court's view, this is such a case. Here, there is a substantial likelihood of jury confusion in view of the subtle differences in the theories of liability not just among the state law but especially in contrast to the federal claim. As shown above, this analysis does not apply to all of the state law claims. The Court does exercise supplemental jurisdiction over certain state law claims: the California FEHA claim and California Civil Code § 1940.2. These two claims are identical to certain federal FHA claims Plaintiffs brought and will not confuse the jury.

But with regard to the five other claims, there is a high risk of jury confusion given the plethora of allegations and different states of mind required for each claims. With regard to Plaintiffs third claim, violations of the Unruh Civil Rights Act, a plaintiff must show (1) defendant denied plaintiff full and equal accommodations, (2) defendant's conduct was substantially motivated by plaintiff's protected characteristics, (3) plaintiff was harmed, and (4) defendant's conduct was a substantial factor in causing plaintiff's harm. California Civil Jury Instructions (CACI) No. 3060. "[A] plaintiff seeking to establish a case under the Unruh Act must plead and prove intentional discrimination in public accommodations in violation of the terms of the Act." *Harris v. Capital Growth Investors XIV*, 52 Cal. 3d 1142, 1175, 278 Cal. Rptr. 614, 805 P.2d 873 (1991), *superseded by statute in part as recognized in Munson v. Del Taco, Inc.*, 46 Cal. 4th 661, 664–65, 94 Cal. Rptr. 3d 685, 208 P.3d 623 (2009). In contrast, the FHA does not

---

[29] The Court notes that Individual Plaintiffs' Civil Code § 1942.5 claim is not predicated on Correa's threats to call authorities in response to Martinez, Velasquez, Castro, and Morales's confrontation regarding enforcement of rules against children, unlike the surviving 42 U.S.C. § 3617 theory. Dkt. 86 ¶ 275; *accord* Dkt. 1 ¶ 274. Thus, whereas one theory of FHA retaliation liability survives, this claim fails in its entirety.

| | : |
|---|---|
| Initials of Preparer | |
| | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:17-cv-03581-SVW-MRW | Date | June 6, 2018 |
|---|---|---|---|
| Title | *Martinez et al. v. Optimus Props., LLC et al.* | | |

require proof of intentional discrimination or that defendants' conduct was "substantially motivated" by Plaintiff's protected characteristics. A jury could confuse which mental state or motivation is necessary for which claim.

The fifth claim for negligence requires a showing of "(1) defendant's obligation to conform to a certain standard of conduct for the protection of others against unreasonable risks (duty); (2) failure to conform to that standard (breach of the duty); (3) a reasonably close connection between the defendant's conduct and resulting injuries (proximate cause); and (4) actual loss (damages)." *McGarry v. Sax*, 158 Cal. App. 4th 983, 994, 70 Cal. Rptr. 3d 519 (2008). These claims require findings about the appropriate standard of conduct, which a jury might impermissibly use in analyzing the FHA claims.

The sixth claim regarding private nuisance would require a showing of "substantial interference with the use and enjoyment of the premises." *See Stoiber v. Honeychuck*, 101 Cal. App. 3d 903, 919 (1980). These claims require findings of substantial interference with use of the, which a jury might impermissibly use in analyzing the FHA claims. The Court also notes that some of Plaintiffs' theories regarding private nuisance lack merit. Though Defendants' allegedly discriminatory threats, statements, and changes to tenancy terms may serve as the basis for other claims, no reasonable jury could determine that Plaintiffs could be entitled to relief under a theory that these actions are "injurious to health . . .or [are] indecent or offensive to the senses, or an obstruction to the free use of property." Cal. Civ. Code § 3479. Plaintiffs cite no authority—and the Court is aware of no authority—supporting the proposition that a landlord may be liable in nuisance for this conduct. *See Stoiber v. Honeychuck*, 101 Cal. App. 3d 903, 912 (1980) (detailing defective conditions of the premises underlying plaintiff's nuisance claim). Summary judgment is **GRANTED** to the extent Plaintiffs' private nuisance claim is couched in "making false, threatening, and derogatory statements to Individual Plaintiffs" and "imposing unduly oppressive changes in the terms of Individual Plaintiffs' tenancies." The remaining claims are **STAYED**.

Plaintiffs' seventh claim for violations of the Los Angeles Rent Stabilization Ordinance would also confuse the jury with regard to Plaintiffs' federal claims. In Los Angeles, "[a]ny person who demands . . . any payment of rent in excess of the maximum rent or maximum adjusted rent . . . shall be liable in a civil action to the person from whom such payment is demanded." L.A. Mun. Code § 151.10(A). Rent increases include "any reduction in housing services where there is not a corresponding reduction in the amount of rent received." *Id.* § 151.02. These claims require a jury to decide what appropriate rent might be, an element that is irrelevant to Plaintiffs' FHA claims. The Cal. Civ. Code claims would require a finding of retaliation, which the jury could use in determining the FHA claims as well. This is likely to

:

Initials of Preparer _____

PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:17-cv-03581-SVW-MRW | Date | June 6, 2018 |
|---|---|---|---|
| Title | *Martinez et al. v. Optimus Props., LLC et al.* | | |

further confuse the jury.

The same analysis applies to Plaintiffs' UCL claims. The Court notes that the standard for claims brought under the "unfair" prong is unsettled. *Zhang v. Superior Court*, 57 Cal. 4th 364, 380 n.9, 159 Cal. Rptr. 3d 672, 304 P.3d 163 (2013). The California Supreme Court has identified four standards used to determine when a business practice is "unfair." *Id.* In *Aleksick v. 7-Eleven, Inc.*, 205 Cal. App. 4th 1176, 140 Cal. Rptr. 3d 796 (2012), the court found that a plaintiff claiming a violation of the "unfair" prong must establish that "the public policy which is a predicate to the action [is] 'tethered' to specific constitutional, statutory or regulatory provisions." *Id.* at 1192. In *Ticconi v. Blue Shield of Cal. Life & Health Ins. Co.*, 160 Cal. App. 4th 528, 72 Cal. Rptr. 3d 888 (2008), the court applied a balancing test and examined whether "the practice offends an established public policy or [whether] the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *Id.* at 539 (internal quotation marks and citation omitted). In *Camacho v. Auto. Club of S. Cal.*, 142 Cal. App. 4th 1394, 48 Cal. Rptr. 3d 770 (Cal. Ct. App. 2006), the court found that to establish a claim under the "unfair" prong, the consumer injury must be substantial and neither "outweighed by any countervailing benefits to consumers or competition" nor reasonably avoidable by consumers. Id. at 1403. Finally, in *Progressive W. Ins. Co. v. Yolo Cty. Superior Court*, 135 Cal. App. 4th 263, 37 Cal. Rptr. 3d 434 (Cal. Ct. App. 2005), the court balanced the complained-of practice's impact on the victim against the alleged wrongdoer's reasons, justifications, and motives. *Id.* at 285. The sheer litany of factors here would confuse the jury, especially if all the other state claims were allowed to proceed as well.

Accordingly, the Court bifurcates the trial on the five remaining state law claims and **STAYS** the case with regard to those claims.

**g.   Prayer for Punitive Damages**

Defendants argue that Plaintiffs neither identify claims for which punitive damages may be recovered nor offer sufficient evidence for a jury to award punitive damages. Dkt. 71-1, at 23–24. Plaintiffs respond that they may recover punitive damages under their FHA claim. Dkt. 83, at 25. Punitive damages are recoverable under the FHA "when a defendant's conduct is shown to be motivated by evil motive or intent, or if it involves reckless or callous indifference to the federally protected rights of others." *Fair Hous. of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002) (citing *Smith v. Wade*, 461 U.S. 30, 75 L. Ed. 2d 632, 103 S. Ct. 1625 (1983)). Under California law, punitive damages may be recovered "where it is proven by clear and convincing evidence that the defendant has been guilty of oppression,

Initials of Preparer                    :

PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:17-cv-03581-SVW-MRW | Date | June 6, 2018 |
|---|---|---|---|
| Title | *Martinez et al. v. Optimus Props., LLC et al.* | | |

fraud, or malice." Cal. Civ. Code § 3294(a); *see also, e.g.*, Cal. Gov't Code § 12989.2 (permitting punitive damages as a remedy for FEHA claims).

As described above, multiple witnesses have stated that Defendants' agents expressed an intent to discriminate against Latino and family tenants. *See, e.g.*, AMF ¶¶ 222, 231–32, 239, 240–241, 371. They also attest to ill will Defendants' agents harbored toward Latinos and families. *See, e.g.*, Quintero Decl. ¶ 17 (Mijail deemed Mexicans "'nasty people' who 'didn't take care of themselves' and had 'nasty scents,'" and she complained that a disabled Latina child who "was unable to use the restroom without help" created smells that attracted rodents.). If a jury believes these witnesses, evidence of an intent to evict or remove Latino and family tenants from Defendants' properties and ill will toward Latinas and families would be sufficient to warrant punitive damages. *See Inland Mediation Bd. v. City of Pomona*, 158 F. Supp. 2d 1120, 1160–61 (C.D. Cal. 2001) (discussing the availability of punitive damages in a housing discrimination case); *cf.* Cal. Civ. Code § 3294(c)(1) (defining malice as "conduct which is intended by the defendant to cause injury to the plaintiff or despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights or safety of others"); *Passantino v. Johnson & Johnson Consumer Prods.*, 212 F.3d 493, 515 (9th Cir. 2000) ("[I]n general, intentional discrimination is enough to establish punitive damages liability."). The motion is **DENIED** as to Plaintiffs' prayer for punitive damages.

**h. Claims Against Mickelson**

Defendants argue that Plaintiffs' claims against Mickelson must fail because they did not have direct contact with Jerome Mickelson. Dkt. 71-1, at 24. Defendants offer that Martinez, Velasquez, Deras, and Morales never talked with Mickelson. UMF ¶¶ 47, 132, 172; *see id.* ¶ 195.

Plaintiffs offered evidence that Mickelson was a source of the discriminatory animus against Latinos and families that motivated the LLC Defendants' conduct toward Plaintiffs. *E.g.*, AMF ¶¶ 371, 382; Ayala Decl. ¶¶ 24–25; *cf.* Quintero Decl. ¶¶ 9, 20, 22 (noting Mickelson "explained that the company planned to change the types of tenants who resided at their properties," had a "very specific idea of the types of people he wants to rent to," and "get enraged when tenants did not speak English").[30] Mickelson

---

[30] As explained above, statements by Defendant Mickelson regarding the type of tenants he wished to have at this property would fall under FRE 801(d)(2) as Mickelson is an agent of the corporate defendants and is also a party-opponent in this action as he is a named Defendant.

:

Initials of Preparer

PMC

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:17-cv-03581-SVW-MRW | Date | June 6, 2018 |
|---|---|---|---|
| Title | *Martinez et al. v. Optimus Props., LLC et al.* | | |

also is party to the acts underlying Plaintiffs' claims. For example, Mickelson is the signatory on the April 2015 notices to pay rent or quit Plaintiffs received. *E.g.*, Velasquez Decl. Ex. 3. Defendants have not explained why Plaintiffs' lack of direct contact with Mickelson is dispositive of their claims against him. Summary judgment is **DENIED** as to claims against Defendant Mickelson.

## V.     OTHER PENDING ISSUES

### a.   Motion to Defer Consideration of the Motion for Summary Judgment

On April 5, 2018, Plaintiffs filed a request to deny the motion for summary judgment or defer consideration of the motion pursuant to Federal Rule of Civil Procedure 56(d). Dkt. 105. Plaintiffs asserted that the Court should not rule on the motion for summary judgment until they have an opportunity to digest discovery produced by Defendants on April 3, 2018, pursuant to an order to compelling compliance with a prior order on a discovery motion. Dkt. 105, at 2–6; *see also* Dkt. 93 (order compelling compliance with prior discovery order). Plaintiffs also requested deferral of ruling on the motion for summary judgment until after the resolution of a pending discovery motion filed on March 23, 2018. Dkt. 105, at 6–8; *see also* Dkt. 97 (motion to compel production of electronically stored information). Defendants opposed Plaintiffs' request, arguing that the April 3, 2018 production had already been available to Plaintiffs in a different format months before they made this request, and that the identified documents would not affect the disposition of the motion. *See generally* Dkt. 110; *but see* Dkt. 93, at 2–3 (noting that the earlier production was in a format that Plaintiffs argued "unreasonably restricted their meaningful use of the data," and ordering Defendants to produce an Excel-formatted file).

Since Plaintiffs filed this request, the Court granted the March 23, 2018 discovery motion in part. Dkt. 131, at 2. The Court directed Defendants to produce rent rolls for the tenants' properties by May 16, 2018, and to produce tenant folders and other electronically stored materials by May 23, 2018. *Id.*

Under Federal Rule of Civil Procedure 56(d), a nonmovant may show by declaration that, "for specified reasons, it cannot presents facts essential to justify its opposition." If the nonmovant does so, the Court may defer consideration of the motion or deny it, allow time for additional discovery, or issue any other appropriate order. *Id.* The party requesting additional time to conduct discovery to oppose summary judgment "must show: (1) it has set forth in affidavit form the specific facts it hopes to elicit from further discovery; (2) the facts sought exist; and (3) the sought-after facts are essential to oppose summary judgment." *Family Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp.*, 525 F.3d 822, 827 (9th Cir.

| | : |
|---|---|
| Initials of Preparer | |
| | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:17-cv-03581-SVW-MRW | Date | June 6, 2018 |
|---|---|---|---|
| Title | *Martinez et al. v. Optimus Props., LLC et al.* | | |

2008). It is within the Court's discretion whether to grant a Rule 56(d) motion. *Morton v. Hall*, 599 F.3d 942, 945 (9th Cir. 2010).

Plaintiffs' request sets forth the existence of and the facts they intend to use from the documents produced on April 3, 2018 and to be produced by May 23, 2018. *See, e.g.*, Cuff Decl., Dkt. 105-1, ¶¶ 21–25, 31–33. Whether the facts contained in these documents is "essential" to oppose Defendants' motion is more complicated. The Court is able to adjudicate the motion in certain respects without the need to resort to information that may be contained in these documents. That is, information contained in the records of non-Plaintiff tenants inhabiting Defendants' buildings is immaterial to the extent Plaintiffs' claims survive or fall irrespective of this additional evidence. For example, facts about three-day notices issued to Plaintiffs' neighbors is inessential to the extent Plaintiffs adduce evidence of Defendants' intent to evict Plaintiffs on the basis of their race and familial status, and any evidence of disability discrimination against Plaintiffs' neighbors do not cure Plaintiffs' failure to establish that they are disabled.

The Court determines that the sought-after facts may be essential to one aspect of Plaintiffs' FHA and FEHA claims: whether changes in Defendants' rent collection practices had a discriminatory impact on the terms, conditions, or privileges of Plaintiffs' tenancy on the basis of their Latina identity.[31] Dkt. 86 ¶¶ 230, 246; *accord* Dkt. 1 ¶¶ 229, 245. As Plaintiffs' opposition brief appears to concede, this theory of Plaintiffs' claims is based solely on a disparate impact, not a discriminatory treatment, theory. Dkt. 83, at 18. Thus, the facts Plaintiffs seek are essential.

Therefore, the request is **GRANTED** in part. Pursuant to Federal Rule of Civil Procedure 56(d)(1), the Court defers a decision on this issue until after Defendants complete the production of the compelled discovery on May 23, 2018. Plaintiffs are **ORDERED** to file a supplemental brief regarding this theory no later than June 15, 2018. Defendants may file a responsive brief no later than seven days after Plaintiffs file their supplemental brief. These briefs may not exceed five pages (excluding declarations and exhibits). The request is **DENIED** in all other respects.

**b.** *Ex Parte* **Application to Supplement Summary Judgment Record**

On April 3, 2018, Plaintiffs filed an *ex parte* application to supplement the summary judgment record with declarations made by Angelina Quintero and Alma Stankovic. Dkt. 101. Defendants opposed.

---

[31] This issue is also dispositive as to whether Plaintiffs' UCL claim under the "unlawful" prong may proceed on this theory.

|  | : |
|---|---|
| Initials of Preparer | |
| | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:17-cv-03581-SVW-MRW | Date | June 6, 2018 |
|---|---|---|---|
| Title | *Martinez et al. v. Optimus Props., LLC et al.* | | |

Dkt. 102. At the April 9, 2018 hearing on the motion for summary judgment, the Court ordered Plaintiff to submit declarations from each witness they intend to call at trial. *See* Dkt. 113. Plaintiff filed those declarations on May 9, 2018, and they included declarations from Quintero and Stankovic. Quintero Decl., Dkt. 130-22; Stankovic Decl., Dkt. 130-27. The Quintero declarations are the same, *compare* Quintero Decl., Dkt. 130-22, *with* Sharma Decl., Dkt. 101-1, Ex. 6, and the Stankovic declarations are materially similar, *compare* Stankovic Decl., Dkt. 130-27, *with* Sharma Decl. Ex. 7.

The Court's request for trial witness declarations rendered the relief sought by the *ex parte* application unnecessary. The Court **DENIES** the ex parte application as moot.

### c. Order to Show Cause Why Rule 11 Sanctions Should Not Be Imposed

The Court must register its disappointment with the quality of both parties' advocacy in this action. The parties have consumed Magistrate Judge Wilner's time and resources with excessively long and unnecessary discovery motions. *See, e.g.*, Dkt. 30, at 1–2 (ordering the parties to show cause why a discovery dispute of 1,765 pages should not be dismissed as self-indulgent); Dkt. 93, at 1–2 (noting that, even after a handful of hearings and conferences, "the parties continue to be far apart on basic issues regarding the manner and scope of production"). Given the weight and nature of the claims, the parties' briefing on this motion was, frankly, dismayingly substandard. For example, Defendants stated that a litany of federal and state statutes and regulations "required" them to exclude children from hallways, stairways, and fire escapes, but none of them were applicable. Dkt. 71-1, at 10–11; *see supra* note 21. In the opposition brief, to establish the elements of their *private* nuisance claim, Plaintiffs quoted a case discussing the elements of a *public* nuisance claim. Dkt. 83, at 20 (quoting *Schaeffer v. Gregory Vill. Partners, L.P.*, 105 F. Supp. 3d 951, 966 (N.D. Cal. 2015)). This briefing is unacceptable.

Indeed, the motion has brought several issues to the Court's attention regarding the representations counsel have made to the Court over the course of this litigation. The Court notes that Plaintiffs' scattershot complaint and FAC contain a host of impertinent allegations. For example, the FAC asserts disability discrimination claims on behalf of the Individual Plaintiffs, who are not alleged to be disabled. Dkt. 86 ¶¶ 233, 243; *accord* Dkt. 1 ¶¶ 232, 242. It also asserts blockbusting claims clearly inapplicable to Plaintiffs. See supra Part IV.b.4. Likewise, the pleadings in the related actions contain superfluous allegations not applicable to the plaintiffs in those actions. *See, e.g.*, First Amended Complaint ¶¶ 115, 126, *Allen v. Optimus Props., LLC*, No. 2:17-cv-03584-SVW-MRW, Dkt. 50 (asserting race discrimination claims on behalf of plaintiffs who allegedly suffered disability discrimination).

:

Initials of Preparer

PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:17-cv-03581-SVW-MRW | Date | June 6, 2018 |
|---|---|---|---|
| Title | *Martinez et al. v. Optimus Props., LLC et al.* | | |

The Court is unable to conceive of a colorable argument why these legal contentions were warranted or why Defendants have cited completely inapplicable law in multiple locations. It is also unconvinced that any neglect by counsel is excusable. The Court notes that plaintiffs across the related actions were given leave to amend their complaint nearly a year after the complaints in these actions were filed and even longer since the Court ordered these actions divided. The Court also notes that Defendants filed the Motion for Summary Judgment and should have been prepared to use pertinent caselaw to defend their arguments. The Court **ORDERS COUNSEL FOR BOTH PARTIES TO SHOW CAUSE** why sanctions should not be imposed under Federal Rule of Civil Procedure 11(c)(3) for presenting allegations or caselaw that are clearly inapplicable to the case at hand. *See* Fed. R. Civ. P. 11(b)(2). Both parties must respond to this order to show cause no later than June 15, 2018.

### d. Consolidation of Trials

Having examined the evidence presented in this motion, the Court determines that there is significant overlap in the factual and legal questions involved in the race and familial status claims among the related actions. Conducting a single trial the trials in this action, *Martinez v. Optimus Properties, LLC*, No. 2:16-cv-03581-SVW-MRW (C.D. Cal. filed May 11, 2017); *Ramos v. Optimus Properties, LLC*, No. 2:16-cv-03582-SVW-MRW (C.D. Cal. filed May 11, 2017); *Escamilla v. Optimus Properties, LLC*, No. 2:16-cv-03583-SVW-MRW (C.D. Cal. filed May 11, 2017); and *Guerrero v. Optimus Properties, LLC*, No. 2:16-cv-03586-SVW-MRW (C.D. Cal. filed May 11, 2017), would serve the interests of justice and judicial economy. Consequently, the Court **CONSOLIDATES** the trials in these actions. The trial will begin on July 10, 2018 at 9:00 a.m., and a pretrial conference will be held on July 2, 2018 at 3:00 p.m.

The related actions bringing disability discrimination claims, *Allen v. Optimus Properties, LLC*, No. 2:16-cv-03584-SVW-MRW (C.D. Cal. filed May 11, 2017); and *Rivera v. Optimus Properties, LLC*, No. 2:16-cv-03585-SVW-MRW (C.D. Cal. filed May 11, 2017), are unaffected by this consolidation.

### VI.    CONCLUSION

The Court rules as follows:

- The request to deny without prejudice or defer consideration of the motion for summary judgment (Dkt. 105) is **GRANTED** in part. The Court defers consideration of the motion to the extent

|  | : |
|---|---|
| Initials of Preparer | |
| | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:17-cv-03581-SVW-MRW | Date | June 6, 2018 |
|---|---|---|---|
| Title | *Martinez et al. v. Optimus Props., LLC et al.* | | |

Plaintiffs' Fair Housing Act claim under 42 U.S.C. § 3604(b) is predicated on changes in rent collection practices. Plaintiffs are **ORDERED** to file a supplemental brief regarding this theory no later than June 15, 2018. Defendants may file a responsive brief no later than seven days after Plaintiffs file their supplemental brief. These briefs may not exceed five pages (excluding declarations and exhibits). The request to defer consideration is **DENIED** in all other respects.

- The ex parte application to supplement the summary judgment record (Dkt. 101) is **DENIED** as moot.

- The motion for summary judgment (Dkt. 71) is **GRANTED** to the extent Plaintiffs' Fair Housing Act claim is based on 42 U.S.C. § 3604(a), 42 U.S.C. § 3604(e), and 42 U.S.C. § 3604(f)(2). The motion is **GRANTED** to the extent Plaintiffs Deras and Castro bring a Fair Housing Act claim under 42 U.S.C. § 3604(c). The motion is **GRANTED** to the extent Plaintiffs bring a Fair Housing Act claim under 42 U.S.C. § 3617 on the basis that Defendants issued notices threatening eviction and brought unlawful detainer actions against Plaintiffs. The motion is **GRANTED** to the extent Plaintiffs' California Fair Employment and Housing Act claim fails for the same reasons the court grants summary judgment with respect to Plaintiffs' theories of Fair Housing Act liability under 42 U.S.C. § 3604(a), (c), (e), (f)(2), and § 3617. The motion is **GRANTED** to the extent Individual Plaintiffs' private nuisance claim is predicated on statements to Plaintiffs and changes to the terms of their tenancies. The motion is **GRANTED** as to the eighth claim for violations of California Civil Code § 1942.5. The motion is stayed with regard to violations of the Unruh Civil Rights Act, Private Nuisance, Negligence, violations of the Los Angeles Rent Stabilization Ordinance, and violations of California Unfair Competition Claims as the Court **STAYS** those claims. The motion for summary judgment is **DENIED** in all other respects.

- The Court **ORDERS COUNSEL FOR BOTH PARTIES TO SHOW CAUSE** why sanctions should not be imposed for presenting unfounded claims and legal contentions in violation of Federal Rule of Civil Procedure 11(b)(2). Both parties must respond to this order to show cause no later than June 4, 2018.

- The Court **CONSOLIDATES** *Martinez v. Optimus Properties, LLC*, No. 2:16-cv-03581-SVW-MRW (C.D. Cal. filed May 11, 2017); *Ramos v. Optimus Properties, LLC*, No. 2:16-cv-03582-SVW-MRW (C.D. Cal. filed May 11, 2017); *Escamilla v. Optimus Properties,*

Initials of Preparer                                  :

PMC

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:17-cv-03581-SVW-MRW | Date | June 6, 2018 |
|---|---|---|---|
| Title | *Martinez et al. v. Optimus Props., LLC et al.* | | |

*LLC*, No. 2:16-cv-03583-SVW-MRW (C.D. Cal. filed May 11, 2017); and *Guerrero v. Optimus Properties, LLC*, No. 2:16-cv-03586-SVW-MRW (C.D. Cal. filed May 11, 2017), for the purpose of trial. The trial in these actions will begin on July 10, 2018 at 9:00 a.m., and a pretrial conference will be held on July 2, 2018 at 3:00 p.m.

- The Court notes that parties may continue with settlement hearings as needed but the trial dates are not subject to change on that basis.

   **IT IS SO ORDERED.**

                                                                    :

Initials of Preparer

                                                                    PMC